24299. WILLIFORD, for use, etc., *v.* MOORE *et al.*

DECIDED JULY 23, 1935. REHEARING DENIED SEPTEMBER 26, 1935.

*Q. L. Williford, E. H. George, Miles W. Lewis,* for plaintiff.
*C. S. Baldwin Jr.,* for defendants.

MACINTYRE, J. The ultimate question for determination in this case is whether or not the court erred in sustaining a general demurrer to the petition as amended.

The original petition, brought by Quincy L. Williford for the use of the "Mayor and City Council of Madison, a municipal corporation . . ," against "John L. Moore, Mayor, and M. A. McDowell, A. C. Zachry, B. M. Atkinson, and R. M. Turnell, councilmen or aldermen of said municipality," avers in substance that "petitioner is a resident and taxpayer of said municipality;" that "from April 1/30 to April 1/33 said named defendants were

. . councilmen or aldermen of said municipality, charged with the duty and responsibility of managing the affairs of said municipality, levying and collecting its taxes and disbursing the funds realized therefrom in conformity with the law, having no authority whatever not conferred upon them by law;" that "during said years said municipality was required by law to appropriate funds, within restrictions, for the maintenance of a public-school system under an act of the General Assembly . . approved Dec. 11/94," and that "by said act it was the duty of said mayor and councilmen to appoint at stated times members of a board of education, and by a later act said mayor was made ex-officio a member of said board," and that "members of said board were and have been duly appointed by said mayor and councilmen;" that said act "provides that said mayor and council shall require said board to submit an annual estimate of the expenses of said school for the following year . . to said mayor and councilmen for rejection or approval on or before August 1 of each year, and forbids the levying or collection of taxes for school purposes until said estimate is submitted, and . . provides that no tax in excess of three tenths of 1 per cent. of the total valuation of taxable property be appropriated and paid over to said board of education for school purposes, except that the option was given by said act to add to said sum any part or all of the special taxes collected by said municipality;" that "no estimate was submitted by said board on August 1 of each of the years named, or at any other time, so far as plaintiff knows, yet said defendants each year levied taxes for the support of said school, including it in the general levy, in violation of law;" that, "since no estimates were submitted, there was no way of determining what the expenses of said school would be, and . . funds were appropriated and paid over to said board of education, as, when, and in amounts demanded by it, utterly without any regard whatever for the law providing therefor;" that "from April 1/30 to April 1/31 there was paid to said board of education by . . defendants out of the treasury of said municipality . . $12,004.64," when "the total taxable property of said municipality for 1930 was assessed at $1,885,069, of which three tenths of 1 per cent. was $6283.56, allowed by law for said school," and "the special taxes for that year were $2028.01, which could also be appropriated to the mainte-

nance of said school, the two together being $8311.47, the highest amount permitted by law to be paid to said school," and "said defendants, in paying out said sum of $12,004.64, paid an excess not allowed by law, in the sum of $4177.75, and are chargeable therewith;" that "from April 1/31 to April 1/32 said defendants paid out of the municipal treasury to said board of education . . $2494.27 in excess of what was allowed by law, and are chargeable therewith" (said excess being arrived at in the same manner in which the alleged excessive payment for the previous year was determined) ; that "from April 1/32 to April 1/33" said defendants paid to said school board $1563.19 in excess of the sum that could have been legally devoted to school purposes (said excess being arrived at as above indicated) ; and that the total amount "so paid by defendants illegally, without authority of law, and in dereliction of their duty," was "$8235.35, which should in good conscience be paid back into the municipality's treasury by said defendants," with interest thereon. The petition concludes: "Wherefore, petitioner for the use of the Mayor and City Council of Madison prays judgment for said total sum with interest, as alleged, against said defendants, and that process issue directed to said defendants, requiring them and each of them to be and appear at June term, 1933, of this court to answer this complaint."

To the original petition the defendants demurred as follows:

1. The petition "sets out no cause of action."

"2. Because the facts alleged show at most that defendants as Mayor and Aldermen of the municipality appropriated to one lawful purpose money lawfully collected for another, and there is no liability at law for such appropriation.

"3. Because the acts for which it is sought to hold defendants liable were legislative acts performed by them in their capacity as Mayor and Aldermen of the City of Madison, and there is no liability at law for such acts so performed.

"4. Because there is no proper party plaintiff in said petition.

"5. Because the cause of action, if any exists, is not in the plaintiff, and plaintiff has no right, power, or authority to sue defendants on said alleged cause of action.

"6. Because plaintiff is not entitled to sue on said alleged cause of action for the use of the municipality, for that he has no cause of action and is not entitled to sue on said alleged cause of action.

"7. Specially, to the allegations of paragraph 1 of said petition that petitioner brings this petition for the use of the Mayor and City Council of Madison, for that plaintiff has no cause of action and has no right, power or authority to bring said petition either for himself or for the use of said Mayor and City Council of Madison."

On March 1, 1934, substantially the following amendment to the petition was allowed, subject to demurrer:

"10. At the time of filing this suit, and for a considerable time prior thereto, the Mayor and Council of the City of Madison were: M. A. McDowell, Mayor, R. M. Turnell, A. C. Zachry, B. M. Atkinson, and B. S. Thompson, four of the five being defendants herein.

"11. Plaintiff alleges that the foregoing named officials have had entire control, under the law, of the financial and other affairs of the corporation, The Mayor and City Council of Madison, and to have called upon them in their official capacity to file suit . . against themselves in their individual capacity would have been manifestly futile and useless, and that, moreover, such a suit filed in such a manner could not have been of any benefit to said municipality.

"12. The utter futility of any demand on the officers aforesaid . . to file suit in the name of the corporation against themselves individually is conclusively shown by the admission in judicio made by the defendants . . , in that said defendants have filed an answer herein by which they deny any liability on account of the matter complained of . . , such answers being an admission that they would not have complied with any such demand," and their "conduct and acts have uniformly and consistently evidenced the fact that they would not have . . sued themselves."

On March 1, 1934, the defendants demurred generally and specially to the petition as amended, the substance of the general demurrer being that "neither Q. L. Williford nor said municipality have any right or cause of action, . . because the petition shows on its face that either of said parties is estopped to bring such an action, because they permitted, with full knowledge, for a long series of years said money to be so appropriated and expended." On March 31, 1934, the petition was for the second time amended, "subject to demurrer," substantially as follows:

13. While petitioner is not subject to special taxes assessed by

said city, he is liable for, and pays, ad valorem taxes, and "has therefore sustained special damages, in that taxes collected on ad valorem basis have been diverted from their proper channel as stated . . and applied to the maintenance of the schools, and no sufficient license or special taxes were levied to take care of any deficiency in ad valorem taxes, or, if levied, were not applied," and "therefore plaintiff together with . . those paying ad valorem taxes only have been taxed beyond the limit provided in the city charter for the maintenance of schools, and that class of taxpayers subject to special or license tax have been favored, and in part exempted illegally from taxes for school purposes."

In passing upon the petition as amended at this stage of the case, the court said in part: "The question then resolves itself in, is there a legal cause of action set forth in the original petition and the two amendments under the laws of Georgia? . . The gist of the allegations in this petition and amendments thereto is that the defendants . . while they were acting as Mayor and Aldermen of the City of Madison paid over to the trustees of the Madison High School more of the ad valorem taxes than authorized by the charter of said city. There is no allegation that the defendants fraudulently disposed of any of said funds . . , but only by resolution diverted said ad valorem taxes to said school." After quoting headnote 2 of the decision in the case of *McCord* v. *Jackson*, 135 *Ga.* 176 (69 S. E. 23), the court said: "As was said in subparagraph (*a*) of said headnote, there are no allegations in said petition and amendment charging any specific diversion of funds to any named unlawful purpose. . . The resolution diverting certain parts of the ad valorem taxes, as charged in the pleadings in this case, to said school was a governmental action, and, under section 897, said defendants acting as Mayor and Aldermen of the City of Madison would not be personally liable under the laws of Georgia. . . Therefore it is ordered . . that the general demurrers . . be sustained, with the proviso that said plaintiff is allowed until June 4, 1934, to tender any desired amendment . . "

On June 4, 1934, substantially the following amendment was allowed subject to demurrer:

"14. That the funds so illegally diverted . . had been raised by taxation and funds for other purposes, principally [to?] pay

salaries, duty officers of the municipality, to provide for the care and maintenance of public buildings and works, to provide for the expenses of municipal courts and care of prisoners in the municipal jail, the streets of said City of Madison, and to take care of such diversion, at least in part, the municipal authorities . . had to raise the valuation of properties within said city far beyond the market value of same, thereby imposing an illegal and undue burden on the petitioner and other taxpayers of said City of Madison.

"15. That, notwithstanding the said raise of taxable values beyond their true market values, the purposes for which the money so raised and so diverted have suffered materially; that had such funds not been so diverted the streets and public parks of the said city . . would have received needed care and improvement, the lights in said city would not have been so materially reduced as to be now in need of many more lights . . , and the bonded and other indebtedness . . reduced or a proper sinking fund created for payment of such indebtedness, the city's financial standing and credit strengthened, and its streets, lights and other public works improved and properly cared for.

"16. That at the time such diversions were made to the school fund, it was impossible for the municipal authorities to raise additional funds by taxation during the current year to supplement the funds from which the moneys aforesaid were diverted, the taxing power for the year having been exhausted."

To the petition as thus amended, the defendants demurred upon the same grounds hereinbefore stated, and also demurred upon several special grounds which we deem it unnecessary to state.

The plaintiff then offered the following amendment to the petition, which was allowed, subject to demurrer, and ordered filed as a part of the record:

"17. That the petitioner has been a resident and taxpayer of said municipality continuously since September 1, 1890, and was such at all times mentioned in the petition, and is now such.

"18. That the diversions and misappropriations of the public-school funds complained of . . took place during the years mentioned therein, the exact date of each diversion and how each diversion was accomplished and through what form, if any, defendants went, are matters peculiarly within the knowledge of the defendants."

On June 30, 1934, the court rendered its final judgment sustaining the demurrer to the petition as amended. In that judgment the court said in part: "The plaintiff is not a creditor of the City of Madison, and it is not alleged that said defendants misappropriated any funds belonging to said city, but, on the other hand, paid out the entire funds on the legitimate obligations of said city, and no creditor of said city is complaining of the manner in which said funds were paid out. The decision cited in my opinion or decision on April 23, 1934, is conclusive that the plaintiff does not set forth any cause of action in the original petition and the amendments thereto. Therefore it is ordered that said demurrers be sustained and that said suit be dismissed."

· The bill of exceptions assigns error upon the "judgment sustaining said general demurrers and dismissing plaintiff's petition."

The trial judge bases his judgment sustaining the demurrer and dismissing the petition as amended upon the ruling in the case of *McCord* v. *Jackson,* supra. We quote from that decision as follows:

"2. Municipal authorities are not personally liable in an action to recover money lawfully collected by them for one purpose, but applied to some other lawful liability of the municipality, unless some charter provision or the general law of the State imposes a liability on them in such instances, or unless their action puts it beyond the power of the municipality lawfully to raise during the current year, the money with which to discharge the obligations for which the funds thus misapplied were originally intended.

"(*a*) There are no allegations in the pleadings charging any specific diversion of funds to any named unlawful purpose. General allegations to the effect that funds were diverted to unauthorized purposes are too indefinite to charge personal liability on the officials because of the wrongful misapplication of such funds."

In the case of Hicksville *v.* Blakeslee, 103 Ohio State, 508 (134 N. E. 445, 22 A. L. R. 119), it was held that the members of a municipal council, who in good faith, but in violation of statute, had enacted an ordinance relating to the sale of municipal bonds, could not be held personally liable for sums paid out under the supposed authority of the void ordinance. In that case the court said: "The demurrer, then, presents the square question whether a councilman acting in good faith, who votes for an unauthorized and

therefore void and illegal resolution or ordinance, thereby becomes liable to the village for such sum as may thereafter be paid under the supposed authority of such void resolution or ordinance. That legislative officers are not liable personally for their legislative acts is so elementary, so fundamentally sound, and has been so universally accepted, that but few cases can be found where the doctrine has been questioned and judicially declared." In the case of Lough v. Estherville, 122 Iowa, 479, 483, 484, 485 (98 N. W. 308), the court said: "Accurately speaking, it is an action in which a money judgment is sought to be recovered against the defendants, as individuals, on account of acts done by them while acting as mayor and councilmen of the defendant city in excess of the constitutional limit; the demand for damages being predicated upon the allegation that plaintiff and the other taxpayers of said city will be compelled, by taxation, to pay such debt. That a taxpayer, for himself and others, may sue in equity—proper allegations being made—for an injunction to restrain the officers of a municipal corporation from contracting an indebtedness in excess of the constitutional limit, has been held repeatedly. We need not cite cases. They are familiar to all. But where a debt has been created notwithstanding the limitation, may the city officials who by their official acts have knowingly and wrongfully brought about such result be held personally liable for the amount of such debt; it being conceded that the city will be compelled to pay the same, although it has not yet done so? This is the question we have to deal with. The demand for judgment being on behalf of the municipality, we may dispose of the question as though the action had been instituted and was being prosecuted by the city. . . Counsel for appellant does not cite any case holding that the mayor and the respective members of the council of a city may be held personally liable in damages because that municipal indebtedness in excess of the constitutional limit has been contracted or permitted. We know of no such case, and we can not say that there is anything in reason or the spirit·of our system of government that dictates the promulgation of any such rule at our hands. While a violation of the constitution in the respect in question is to be condemned, and the courts should interfere to prevent such violation whenever called upon so to do, yet we are not prepared to adopt the suggestion that an action for damages may be re-

sorted to, as affording a proper means of redress, where a violation has been accomplished. What might be said in a case where there had been a wanton dissipation of the corporate property, or an appropriation of its funds without form of justification or excuse, we need not determine, as no such question is here involved."

There is a vast difference between a proceeding to restrain the officers of a municipality from appropriating more of its funds to a particular purpose than could be legally done, and an action at law brought by a citizen and taxpayer of the municipality, for its use, to recover from such officers a large sum of money which, by the official act of such officers, had been "illegally, without authority of law, and in dereliction of their duty" (but not in bad faith) diverted to a legal purpose, when the defendants have not benefited in any way by their act and the municipality has not lost a penny of its money thereby. Under the foregoing authorities, we hold that the petition in the instant case does not set out a cause of action, and that the court did not err in sustaining the general demurrer and dismissing the petition.

If the conclusion reached above is correct, the case crumbles at its very foundation, and it becomes unnecessary to decide the other questions raised by the demurrer.

*Judgment affirmed. Guerry, J., concurs. Broyles, C. J., dissents.*

BROYLES, C. J., dissenting. In my opinion the petition as finally amended set out a cause of action, and the court erred in dismissing it on general demurrer. The cases cited in the opinion of the majority of this court are distinguished by their particular facts from this case.