## A04A0955. COMMON CAUSE/GEORGIA et al. v. CAMPBELL.
(602 SE2d 333)

ELLINGTON, Judge.

Common Cause/Georgia, a chapter of Common Cause, Inc., and Elizabeth Hale Barnett (collectively, "Common Cause") brought an action on behalf of the City of Atlanta, its citizens and its taxpayers, and naming the City as an involuntary plaintiff, against the City's former mayor, William C. Campbell. Common Cause claimed that the City was damaged by Campbell's failure to sign a contract within 30 days of the contract's approval by the Atlanta City Council, or advise the City Council of his reasons for not doing so, as required by the City Code. The trial court dismissed the City as an involuntary plaintiff and dismissed the complaint, and Common Cause appeals. We affirm.

The complaint states that the Parking Company of America, Inc. ("PCOA") operated and managed the parking lots at the Hartsfield Atlanta International Airport under a 1981 contract which was extended over an almost 20-year period. On October 10, 1999, the City issued an invitation for competitive bids for a new parking management contract. PCOA submitted a low bid of $465,000, which was less than the approximately $697,000 the City had paid PCOA for operating and managing the airport parking lots in the preceding year. On October 20, 2000, the City notified PCOA that it was the "lowest, most responsive" bidder and had been awarded the contract.

On November 20, 2000, the City Council adopted a resolution authorizing the Mayor to execute an agreement with PCOA for parking management services at the Atlanta Airport. The resolution also directed the Director of the Bureau of Purchasing and Real Estate to prepare the agreement for execution by the Mayor, to be approved as to form by the City Attorney. Campbell signed the contract with PCOA on January 8, 2002, over 13 months after the City Council authorized its execution.

In November 2002, Common Cause sued Campbell, alleging that the former mayor "allowed his appointees and direct subordinates, the City Attorney and the Purchasing Agent, to delay for 13 months before finally submitting the new contract to the Mayor for his signature in violation of § 2-176 of the Atlanta City Code." The complaint further contended that Campbell breached his fiduciary duty by allowing the City's finance department to continue to pay PCOA at the higher annual rate of $697,000, as specified in the last extension of its contract, rather than the PCOA's bid rate of $465,000. The complaint alleged that the City and its taxpayers were damaged in the amount of $300,000 plus interest as the direct result of

Campbell's breach of duties imposed on him by law, and that Campbell's actions were wilful, wanton, and deliberate and exhibited such a want of care and callous disregard of his fiduciary duties as to subject him to liability for punitive damages under OCGA § 51-12-5.1 and attorney fees under OCGA § 9-15-14 (a) and (b). The complaint asked for a judgment against Campbell in the name of and for the benefit of the City.

After Common Cause filed the complaint, the City filed a motion for dismissal as an involuntary plaintiff. Campbell then filed a motion to dismiss the complaint on the grounds that Common Cause had no standing to bring the action and that the complaint failed to state a claim upon which relief could be granted. Following a hearing, the trial court granted both motions. Common Cause appeals.

1. Common Cause claims the trial court erred in granting the City's motion for dismissal as an involuntary plaintiff because City taxpayers may bring a derivative action against Campbell on behalf of the City. Common Cause argues that a beneficial owner of a business corporation may bring a derivative action in the name of the corporation against a present or former chief executive to compel the officer to account for a breach of fiduciary duty. See OCGA § 14-2-831 (a) (1). They then maintain that there is no reason for exempting present or former officers of municipal corporations from this type of claim.

We are unpersuaded by Common Cause's arguments. For one thing, local government provisions applicable to municipal corporations do not provide for derivative actions by taxpayers in the name of the municipality. See, e.g., OCGA §§ 36-34-1 through 36-34-8. Furthermore, Common Cause does not show any Georgia case law or statutory authority recognizing that a municipal taxpayer may bring a derivative action in the name of a municipal corporation, as may the beneficial owner of a business corporation. We note that taxpayers may bring direct actions in mandamus to compel or enjoin city officials to perform a public duty. See *League of Women Voters &c. v. City of Atlanta*, 245 Ga. 301, 303 (264 SE2d 859) (1980) (allowing a taxpayer to sue to enjoin allegedly ultra vires appointments to the city council). Our Supreme Court has also allowed taxpayers, under certain circumstances, to sue city officials for damages in connection with the unlawful expenditure of public funds, with any recovery to be paid to the city. See *Koehler v. Massell*, 229 Ga. 359, 367-368 (7) (191 SE2d 830) (1972) (allowing taxpayer to sue city officials for unlawfully paying claims based upon a perceived "moral obligation" to do so). These actions did not require the taxpayers to include the city as a party plaintiff. We are not convinced that Common Cause has been deprived of access to any remedy to which they were lawfully

entitled by reason of their inability to include the City as an involuntary plaintiff in a derivative action. Accordingly, we find the trial court correctly dismissed the City as a plaintiff upon the City's request.

2. Without the City as an involuntary plaintiff, the complaint nevertheless asserts a claim against Campbell by Common Cause on behalf of the City's taxpayers and citizens, and Common Cause contends that the trial court erred in dismissing its claim against Campbell. "A motion to dismiss may be granted only where a complaint shows with certainty that the plaintiff would not be entitled to relief under any state of facts that could be proven in support of [his or] her claim." (Citation and punctuation omitted.) *Ga. Military College v. Santamorena*, 237 Ga. App. 58 (514 SE2d 82) (1999). We review the trial court's ruling on a motion to dismiss under the de novo standard of review. See *Cook v. Regional Communications*, 244 Ga. App. 869, 870 (539 SE2d 171) (2000).

Under some circumstances, a citizen may bring suit against public officials when the municipality itself has failed to act.

> Where the question is one of public right and the object is to procure the enforcement of a public duty, no legal or special interest need be shown, but it shall be sufficient that a plaintiff is interested in having the laws executed and the duty in question enforced.

OCGA § 9-6-24. But while this principal may allow taxpayers to maintain suit against public officials to demand performance of a public duty, *Bd. of Commrs. &c. v. Montgomery*, 170 Ga. 361, 366 (153 SE 34) (1930), it does not provide a remedy to "compel the undoing of acts already done or the correction of wrongs already perpetrated." (Citations and punctuation omitted.) *Brissey v. Ellison*, 272 Ga. 38, 40 (526 SE2d 851) (2000). See also *Hilton Constr. Co. v. Rockdale County Bd. of Ed.*, 245 Ga. 533, 540 (4) (266 SE2d 157) (1980). Inasmuch as Campbell's alleged misdeeds have been completed, Common Cause must show other authority for its claim.

For this authority, Common Cause relies on *Koehler v. Massell*, 229 Ga. at 359. *Koehler* involved an action by a taxpayer on his behalf and those similarly situated against the Mayor and the Alderman of the City of Atlanta in their personal capacities, including a claim for damages for the use of the city. The plaintiff contended that the defendants had caused the city to pay certain unenforceable claims, designated as "moral obligations," arising out of the alleged negligent performance by city employees of governmental functions. Id. at 360. The trial court dismissed the complaint, but our Supreme Court reversed, concluding that the payments as alleged were illegal and

ultra vires and if the plaintiff could prove "bad faith, malice or fraud, coupled with a showing of direct or indirect pecuniary gain to the municipal officers accruing therefrom," he could recover damages on behalf of the city. Id. at 366 (7).

We conclude that our Supreme Court allowed the taxpayer action against the city officials in *Koehler* because the plaintiff contended that the officials caused the city to expend public funds for an unlawful purpose. *Koehler*'s emphasis on the unlawful expenditure of funds is shown by its explanation of *Williford v. Moore,* 51 Ga. App. 869 (181 SE 515) (1935). In that case, Williford sued the mayor and members of the Madison city council in their individual capacities for damages "for the use of" the municipality. Williford claimed that the mayor and city council paid more money to the school board from the municipal treasury than "could have been legally devoted to school purposes." Id. at 871. In affirming a dismissal of the suit, we reasoned as follows:

> There is a vast difference between a proceeding to restrain the officers of a municipality from appropriating more of its funds to a particular purpose than could be legally done, and an action at law brought by a citizen and taxpayer of the municipality, for its use, to recover from such officers a large sum of money which, by the official act of such officers, had been "illegally, without authority of law, and in dereliction of their duty" (but not in bad faith) diverted to a legal purpose, when the defendants have not benefited in any way by their act and the municipality has not lost a penny of its money thereby.

Id. at 877. *Koehler* quoted this passage, but distinguished *Williford* as "involv[ing] the diversion of funds from one legal purpose to another *legal* purpose. The diversion of funds charged here is from a legal purpose to an *illegal* purpose." (Emphasis in original.) 229 Ga. at 367 (7).

The claims made against Campbell in this case are based on allegations that he breached his duty as trustee and fiduciary of the people and violated the City Code in not timely executing the City's new contract with PCOA or informing the City Council of his reasons for not doing so. However, if the City paid more than it might have for parking services, it did so under an existing contract. Common Cause's complaint shows no more than Campbell, by failing to perform his public duty, allowed excessive expenditure of City funds for a lawful purpose. This is analogous to the claim which we disallowed in *Williford,* and does not involve the diversion of City funds to an illegal purpose. Given *Koehler*'s emphasis on the illegal

expenditure of public funds, we conclude that *Koehler* is distinguishable and cannot be relied upon to allow Common Cause's claim. And in such case, we believe that the general principle would apply, namely that taxpayers may not sue city officials for "the undoing of acts already done or the correction of wrongs already perpetrated." See *Brissey*, 272 Ga. at 40 (recognizing the right of a plaintiff to sue to enforce a public duty while disallowing a suit to correct a wrongful act); see *Adams v. Ga. Dept. of Corrections*, 274 Ga. 461, 463 (553 SE2d 798) (2001) (there is a long-recognized rule that a private plaintiff who is not directly affected by an official act "may not assume the role of champion of a community to challenge public officers to meet him in courts of justice to defend their official acts") (citation and punctuation omitted). Accordingly, we conclude that the trial court properly dismissed the complaint as failing to state a legally cognizable claim.

*Judgment affirmed. Andrews, P. J., and Miller, J., concur.*

DECIDED JULY 20, 2004 — ▮▮▮▮▮▮▮▮▮

*Bondurant, Mixson & Elmore, Emmet J. Bondurant, Gordon L. Hamrick IV*, for appellants.

*Troutman Sanders, Kamla Alexander, Kaye W. Burwell, Damien S. Turner*, for appellee.