A99A1851. SOUTHERN PRESTIGE HOMES, INC. et al.
v. MOSCOSO.
(532 SE2d 122)

BARNES, Judge.

Southern Prestige Homes, Inc. and its president Dian Wolfe (collectively "Prestige") appeal from the trial court's grant of partial summary judgment to Alexis Moscoso. Prestige contends the trial court erred by granting summary judgment to Moscoso on his claim for breach of contract, by denying Prestige's motion for partial summary judgment on Moscoso's claims of conversion, punitive damages, and attorney fees, and by denying Wolfe's motion for summary judgment on Moscoso's claims against her individually. For the reasons that follow, we reverse the grant of summary judgment to Moscoso.

1. The standards applicable to motions for summary judgment are announced in *Lau's Corp. v. Haskins,* 261 Ga. 491 (405 SE2d 474) (1991). When ruling on a motion for summary judgment, "the opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions arising therefrom most favorably toward the party opposing the motion." (Citation and punctuation omitted.) *Moore v. Goldome Credit Corp.,* 187 Ga. App. 594, 596 (370 SE2d 843) (1988). "When reviewing the grant or denial of a motion for summary judgment,

this Court conducts a de novo review of the law and the evidence." (Citation and punctuation omitted.) *Desai v. Silver Dollar City*, 229 Ga. App. 160, 163 (1) (493 SE2d 540) (1997). Contract disputes are particularly well suited for adjudication by summary judgment because construction of contracts is ordinarily a matter of law for the court. *Burns v. Reves*, 217 Ga. App. 316, 318 (1) (457 SE2d 178) (1995).

2. In our review of the trial court's grant of summary judgment to Moscoso, we must construe the evidence and all inferences and conclusions therefrom most favorably toward Prestige, the nonmoving party, and give Prestige the benefit of all reasonable doubts. Viewed in that manner, the evidence shows that pursuant to a reservation agreement, dated March 17, 1996, Moscoso placed a $25,000 deposit to reserve a home constructed on a certain lot in a subdivision. (The year on the reservation agreement was pre-printed; apparently the correct year was 1997.)

Under the terms of the agreement, if a purchase and sale agreement was not executed by March 21, 1997, the reservation agreement would terminate and the deposit would be returned. Even though no purchase and sale agreement was executed by the date specified, the parties signed a purchase and sale agreement on April 8, 1997. The purchase and sale agreement was a pre-printed form contract in which Prestige agreed to complete and sell a home to Moscoso for $589,500, and Moscoso agreed to buy the home from Prestige for that price with a closing date of June 1, 1997. The contract also contained several special stipulations about the completion of the house and allowances for wallpaper, carpets, lighting, landscaping, and ceramic tile, which Moscoso was to select.

The purchase and sale agreement also contained three separate provisions concerning the earnest money, including Exhibit A to the agreement. Paragraph 2. A. states:

> $25,000 in Earnest Money paid upon delivery of this Agreement. The Earnest Money shall be paid to and held by Seller until Closing, at which time it will be credited to Purchaser, or until this Agreement is otherwise terminated and the Earnest Money is dispersed in accordance with Paragraph 6 below. Seller shall be entitled to use the Earnest Money for any purpose whatsoever without obligation to segregate same and to retain any interest earned thereon.

Paragraph 6 provides:

> In the event Purchaser breaches this Agreement, the Earnest Money shall be retained by Seller as liquidated dam-

ages and Seller's sole remedy and relief, and this Agreement shall thereafter be of no further force or effect. In the event Seller breaches the Agreement, or in the event of a dispute between the parties regarding obligations of either or both of them hereunder and upon the election of Seller to terminate the Agreement, the Earnest Money shall be returned to Purchaser together with interest thereon at the rate of three percent (3%) per annum (prorated over the applicable period) as liquidated damages and Purchaser's sole remedy and relief, and this Agreement shall thereafter be of no further force or effect. The amounts identified above in this Paragraph 6 as liquidated damages are not intended as a penalty and have been agreed upon by Seller and Purchaser after deliberation and discussion, and the same constitutes good faith estimates of the damages of the party which would be entitled thereto pursuant to this Agreement, the respective parties' actual damages being difficult if not impossible to ascertain.

Exhibit A to the purchase and sale agreement further specifies how the money would be retained and the obligations of the parties.

Ultimately, however, a dispute developed. Moscoso never made the selections from the allowances, and the closing did not occur on the date specified in the purchase and sale agreement. Consequently, Moscoso filed suit against Prestige and Wolfe, both individually and as president of Prestige, for breaching the reservation agreement by not returning the deposit, for conversion of the deposit, attorney fees, and punitive damages. Later, Moscoso filed an amended complaint restating his original complaint and adding a fraud claim.

Prestige answered denying liability and answered the amended complaint. The answer to the amended complaint also included a counterclaim against Moscoso for breach of contract, fraud, punitive damages, and attorney fees. These allegations were based on Moscoso's failure to close, his lack of good faith, and his misrepresentations.

Moscoso moved for summary judgment alleging that Prestige refused to return the earnest money after the reservation agreement expired, that there was no meeting of the minds because Prestige failed to agree to plans to accommodate Moscoso's son's disability, and because the purchase and sale agreement's finance contingency clause was unenforceable. Prestige responded to Moscoso's motion and moved for partial summary judgment on Moscoso's claims for conversion, punitive damages, and attorney fees and on Moscoso's claims against Dian Wolfe individually.

Subsequently the trial court ruled:

> The Court is of the opinion that the Home Purchase and Sale Agreement dated April 8, 1997, between [the parties] is so vague and ambiguous that there was no meeting of the minds by the parties concerned and that there was, in law, no binding contract for purchase and sale between the parties. This being the case, Plaintiff is entitled to the return of the $25,000 paid by Plaintiff to Southern Prestige Homes, Inc., under the Reservation Agreement between the parties. Alternatively, assuming that the Home Purchase and Sale Agreement is a legally binding contract, the Court finds that the same was rescinded by Defendant, Southern Prestige Homes, Inc., by letter of its counsel to counsel for Plaintiff and that Plaintiff is, therefore, entitled to the return of the $25,000 held by defendant, Southern Prestige Homes, Inc., on the theory of rescission.

3. "A contract is an agreement between two or more parties for the doing or not doing of some specific thing." OCGA § 13-1-1. Further, "construction of a contract is a question of law for the court. Where any matter of a fact is involved, the jury should find the fact." OCGA § 13-2-1. When construing contracts, the courts should prefer "[t]he construction which will uphold a contract in whole and in every part. . . ." OCGA § 13-2-2 (4). Moreover, "[c]ompetent parties are free to choose, insert, and agree to whatever provisions they desire in a contract . . . unless prohibited by statute or public policy. [Cit.]" *Simmons v. Select Ins. Co.*, 183 Ga. App. 128, 129 (1) (358 SE2d 288) (1987).

With these general principles in mind, we have reviewed the contract, and we do not find the unspecified ambiguity the trial court relied upon to find that the contract was nonbinding. The parties' obligations in this agreement are certain and definite. See *Brack v. Brownlee*, 246 Ga. 818, 819 (273 SE2d 390) (1980). The agreement's terms are not vague or indefinite. Compare *Patel v. Gingrey Assoc.*, 196 Ga. App. 203, 206 (2) (395 SE2d 595) (1990); *Farmer v. Argenta*, 174 Ga. App. 682, 683 (331 SE2d 60) (1985). To be enforceable, an agreement must be expressed plainly and explicitly enough to show what the parties agreed upon, *West v. Downer*, 218 Ga. 235, 241 (5) (127 SE2d 359) (1962), and no question exists about the parties' obligations. See *Green v. Zaring*, 222 Ga. 195, 198 (1) (149 SE2d 115) (1966).

In this case, the agreement is a complete document that obligates Prestige to build a house for Moscoso for a certain price and obligates Moscoso to pay that price for the home. That is a contract.

OCGA § 13-1-1. For the same reasons, we do not find too vague or uncertain the agreement's provision regarding Moscoso's obligation to secure financing. Paragraph 3 of the purchase and sale agreement, the loan contingency clause, states:

> A. This Agreement is subject to Purchaser being able to obtain, after diligent efforts, a first mortgage loan at the then prevailing rates in an amount of not less than $489,000 (a "Qualifying Loan.") Purchaser must apply for a Qualifying Loan within five (5) business days after the Agreement Date set forth below, and accept same if offered by any lender. If Purchaser fails to so apply within the agreed five (5) business day period or refuses to accept a Qualifying Loan obtained by Seller or Broker (as defined herein) on Purchaser's behalf, or does any other act to prevent the timely closing of this transaction, then in any such event, Purchaser shall be in default hereunder and Seller shall have the right to exercise its remedies under Paragraph 6 below.

We find that this provision is sufficiently definite to be enforced. The agreement states the amount of the loan and that it was to be a qualifying loan at the prevailing rate. That is sufficient. *Walker v. Anderson*, 131 Ga. App. 596, 597-598 (206 SE2d 833) (1974); *Barto v. Hicks*, 124 Ga. App. 472, 474 (2) (184 SE2d 188) (1971).

The contract also contains a "merger clause" that states that the "Agreement contains the entire understanding of the parties and there are no representations, inducements or other provisions other than those specifically expressed or referred to herein." Therefore, Moscoso's reliance on alleged oral agreements between the parties is misplaced. *Consulting Constr. Corp. v. Edwards*, 207 Ga. App. 296, 298 (1) (427 SE2d 789) (1993) (purchaser who affirmed contract, which contained merger clause and disclaimer provisions and also retained purchased articles, was estopped from asserting that he relied upon seller's misrepresentations).

Accordingly, we find that the trial court erred by finding that this contract is nonenforceable for vagueness.

4. Further, the unspecified letter relied upon by the trial court as a letter of rescission by Prestige's counsel appears to be a letter, dated May 20, 1997, to an attorney who previously represented Moscoso. The letter states:

> This will confirm our telephone conversation of May 20 regarding the status of the above contract. The parties have agreed to terminate the contract and Southern Prestige may place the house back on the market for sale immediately. I

will draft a termination agreement which will provide that Southern Prestige may retain the earnest money paid by your clients of $25,000 provided that the same is deposited at interest. When the house is sold by Southern Prestige a calculation will be performed to determine whether Southern Prestige has lost any money. In addition to any difference in contract sales price the calculation will include any other hard cost such as construction loan interest from June 1 to date of closing, taxes, utilities, etc. Any "lost profit" will be retained by Southern Prestige with a balance to be refunded to Mr. & Mrs. Moscoso.

I understand that you will be out of the city for the balance of the week. I will draft a rescission agreement and fax the same to you for your review next week.

P.S. In view of your most recent telephone message, we need to talk some more about "lost profit" but we are agreed to rescind.

Although the trial court apparently found this letter to be a rescission of the contract, the terms of the entire letter leave little doubt that the trial court misconstrued its effect. Rescission of a contract is a complete abrogation of the contract; it does not leave the parties where the rescission finds them. The parties must be returned as nearly as possible to the status quo ante. *Corbitt v. Harris*, 182 Ga. App. 81, 82 (354 SE2d 637) (1987). Since the letter refers to rescission, but provides for retention of the deposit to be applied against possible damages, the agreement reached was not a unilateral rescission. Unilateral rescission is permitted *"only* when both parties can be restored to the condition in which they were before the contract was made." (Emphasis supplied.) OCGA § 13-4-62.

Under the circumstances, this letter cannot be said, as a matter of law, to be a unilateral rescission. Part of the letter's terms called for Prestige to hold the earnest money to offset for damages, and the letter plainly indicates that the subject of rescission was under negotiation. Therefore, we find the trial court erred by finding this letter was a rescission of the contract. Moreover, whether the parties intended to mutually depart from the contract so as to create a new agreement is ordinarily a question for the jury. *Kusuma v. Metametrix, Inc.*, 191 Ga. App. 255, 257 (3) (381 SE2d 322) (1989). Therefore, the trial court must also be reversed on this alternative basis for returning the deposit.

5. Because no motion for summary judgment was made on Moscoso's fraud claim, that claim remains pending against both defendants. Therefore, the trial court did not err by denying Prestige's motion for summary judgment on Moscoso's claims for punitive dam-

ages and attorney fees since a favorable verdict on a fraud claim can support the award of punitive damages and attorney fees. *Kent v. White*, 238 Ga. App. 792, 794 (1) (b) (520 SE2d 481) (1999).

6. For the reasons discussed in Division 5 above, Moscoso's claims for fraud, punitive damages, and attorney fees remain pending against Wolfe in her individual capacity.

7. Moscoso's claim for return of his earnest money must rest on either breach of contract or fraud. Because questions of fact remain on the breach of contract claim and no motion for summary judgment was made on the fraud claim, the trial court did not err by denying Prestige's motion for summary judgment on the conversion claim.

Accordingly, the judgment of the trial court must be reversed and the case remanded to the trial court for further proceedings, including reconsideration of the parties' motions for summary judgment. Additionally, the trial court is directed to grant summary judgment to Wolfe on Moscoso's breach of contract claim against her individually.

*Judgment reversed with direction. Blackburn, P. J., and Eldridge, J., concur.*

DECIDED MARCH 21, 2000 —
RECONSIDERATION DENIED APRIL 11, 2000.

*Chestnut & Livingston, Tom Pye,* for appellants.
*Cornelison & Van Gelderen, Leon A. Van Gelderen, John A. Ziolo,* for appellee.