**WHOLE COURT**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**July 16, 2013**

# In the Court of Appeals of Georgia

A13A0399. RADIO PERRY, INC. v. COX COMMUNICATIONS, INC.

McFADDEN, Judge.

Radio Perry, Inc., the operator of a local commercial television station, WPGA, and cable operator Cox Communications, Inc. are engaged in a dispute about whether and on what terms Cox must carry WPGA's signal on its cable system. This dispute has resulted in proceedings before this court, the Superior Court of Bibb County, the federal district court, and the Federal Communications Commission (FCC). In the instant case, Radio Perry sought a declaratory judgment that a contract between it and Cox had "been cancelled for material and substantive breach on the part of Cox," that Cox therefore had no basis under the contract to terminate carriage of WPGA, and that Cox must continue to carry WPGA on its system. The trial court granted Cox's

motion to dismiss Radio Perry's complaint. It also denied Radio Perry's motion for continuing injunctive relief, finding that it lacked jurisdiction to grant the relief requested.

We find it possible that Radio Perry could introduce evidence within the framework of its complaint entitling it to the declaratory judgment. Accordingly, we reverse the trial court's dismissal of that complaint. We further find that the trial court erred in concluding that it lacked jurisdiction to grant Radio Perry the injunctive relief it sought. Accordingly, we vacate the trial court's denial of the request for a continuing injunction and remand for it to consider whether such relief is appropriate.

1. *Motion to dismiss.*

We review de novo the trial court's ruling on a motion to dismiss for failure to state a claim under OCGA § 9-11-12 (b) (6). See *Northway v. Allen*, 291 Ga. 227, 229 (728 SE2d 624) (2012). The motion

> should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. In deciding a motion to dismiss, all pleadings are to be construed most favorably to the party who filed them, and all

2

doubts regarding such pleadings must be resolved in the filing party's favor.

*Scouten v. Amerisave Mtg. Corp.*, 283 Ga. 72, 73 (1) (656 SE2d 820) (2008) (citations omitted).

In this case, Radio Perry attached exhibits to and incorporated the exhibits into its complaint, and Cox did the same with its motion to dismiss. The trial court was authorized to consider these exhibits in ruling on the motion to dismiss, and we may consider them in our appellate review as well. See *Stendahl v. Cobb County*, 284 Ga. 525, 526 (1) n. 2 (668 SE2d 723) (2008); *Infinite Energy v. Pardue*, 310 Ga. App. 355, 356 (1) (713 SE2d 456) (2011); *Bakhtiarnejad v. Cox Enterprises*, 247 Ga. App. 205, 207-208 (1) (541 SE2d 33) (2000).

(a) *Facts and background as alleged in the complaint and shown in the incorporated exhibits.*

Radio Perry has broadcast as a television station in the Macon and middle Georgia area since 1995. Cox carries WPGA's signal on its cable system. The Cable Television Consumer Protection Act (the Cable Act) and implementing FCC rules required Radio Perry to elect either "must carry" status or "retransmission consent" status. See 47 U. S. C. §§ 325, 534; 47 C. F. R. § 76.64 (f). Generally, "must carry"

3

status requires a cable system to carry a local commercial television station in its entirety, 47 U. S. C. § 534 (a), while "retransmission consent" status does not, 47 U. S. C. § 325 (b), and local commercial television stations are required to elect their status for three-year cycles. 47 C. F. R. § 76.64 (f) (2). Prior to 2008, Radio Perry elected "must carry" status, but it failed to make a status election for the 2009-2011 cycle by the election deadline, October 1, 2008. See 47 C. F. R. § 76.64 (f) (2). By default, this failure operated as an election of "must carry" status for the 2009-2011 cycle. See 47 C. F. R. § 76.64 (f) (3).

Radio Perry and Cox then entered into the contract at issue in this case. Radio Perry did so at Cox's request, to ensure that Cox would have the right to broadcast WPGA's digital signal during the interim between the expiration of a previous contract between the parties and the date when, under federal law, WPGA would stop broadcasting an analog signal. Radio Perry explains in its appellate brief that its president mistakenly thought that the contract governed only high definition carriage. Instead, under the terms of the contract, Radio Perry elected "retransmission consent" status for the 2009-2011 and 2012-2014 election cycles. The contract provided that Cox would carry WPGA's digital signal "without interruption or alteration" but it further provided that Cox would not be required to carry the signal if WPGA ceased

4

to be a "Top-4" station (defined as a station primarily affiliated with one of four national television networks).

Radio Perry decided to end its affiliation with a "Top-4" network when that network significantly raised the cost Radio Perry would have to pay for the programming; the termination of this affiliation was effective January 1, 2010. When Cox learned of this, it sent Radio Perry a letter stating that on January 1, 2010, it would stop carrying WPGA on its local cable system. Radio Perry filed an action in the Superior Court of Bibb County for declaratory and injunctive relief, seeking a ruling that Cox was required to carry WPGA's signal notwithstanding its lack of "Top-4" station status under another provision of the contract and that Cox would violate the contract if it ceased carriage. Finding that the contract (which Radio Perry had attached to its complaint) unambiguously allowed Cox to terminate carriage, the superior court dismissed the complaint for failing to state a claim. We affirmed that dismissal without opinion pursuant to Court of Appeals Rule 36. *Radio Perry v. Cox Communications*, 309 Ga. App. XXII (2011).

Meanwhile, in March 2010, Radio Perry filed a complaint with the FCC alleging that it had "must carry" status by virtue of its failure to make an election by the October 1, 2008 deadline, despite the contrary terms of the subsequent contract.

Radio Perry also asked the FCC to make other rulings pertaining to terms of the contract. The FCC, in an order dated July 16, 2010, agreed with Radio Perry that the contract terms could not modify Radio Perry's earlier default election of "must carry" status for the 2009-2011 cycle. The FCC, however, declined to rule on other contract terms, noting that its rules "d[id] not prohibit stations that have elected or defaulted to must-carry from making side agreements with cable operators that can [a]ffect the terms of their carriage."

On June 15, 2011, Cox sent Radio Perry a letter stating that it would stop carrying WPGA on July 28, 2011. Cox cited the contract and the prior rulings of the FCC, the Bibb County Superior Court, and this court as its grounds for terminating carriage. Viewing this act to violate the "spirit and letter" of the FCC's ruling that it had "must carry" status, Radio Perry brought an action in federal district court to enforce the FCC's ruling and to stop Cox from terminating carriage. Cox subsequently "announced that it would no longer seek to terminate" but would await the outcome of a petition for emergency relief that Radio Perry filed with the FCC on July 27, 2011.

On September 23, 2011, Radio Perry sent Cox's counsel a letter that it now characterizes as a "rescission notice." Therein, Radio Perry pertinently stated:

6

This letter is intended as formal notice of termination of the "Retransmission Consent and VOD License Agreement" (the "Contract") effective January 1, 2009 between Radio Perry, Inc. ("Radio Perry") and Cox Communications, Inc. ("Cox"). The termination is not based upon any express provision in the contract, but is based upon the fact that Cox has materially and substantially breached the contract based upon the events briefly described below.

The letter described the facts and procedural history set forth above, which Radio Perry characterized as constituting breaches "substantial, material, and fundamental to the contract," pointing specifically to a provision of the contract that subjected the parties's obligations to "all applicable federal, state and local laws, rules and regulations, including, but not limited to, the [Cable Act] and the FCC Rules." It then concluded:

[B]ased upon these material and substantial breaches by your client [Cox], Radio Perry takes the position that the contract referred to above is terminated and at an end. See *Mayor & City of Douglasville v. Hildebrand*, 175 Ga. App. 434 [(333 SE2d 674)] (1985) [physical precedent]. We do not believe that it is necessary to offer to restore the parties to their original position since we are terminating a contract. However, we also reserve our right to damages and these will more than offset any claims of "restoration." Also, if your client is providing any services to my client under the Contract, they should be billed separately

and not set off against any "credit." We do expect your client to continue carrying WPGA-TV on the cable as a "must carry" local broadcaster.

A few days later, on September 27, 2011, Radio Perry notified Cox that it was electing "must carry" status for the 2012-2014 cycle. Cox responded by letter on October 5, 2011, rejecting Radio Perry's notice of termination and noting that Radio Perry had failed to follow the procedure for termination set forth in the contract.

In a December 5, 2011, opinion, the FCC declined to find that Radio Perry had elected "must carry" status for the 2012-2014 cycle. The FCC ruled instead that, under the terms of the contract, Radio Perry "became a retransmission-consent station for the 2012-2014 carriage cycle." It did not address Radio Perry's argument that the contract had been terminated, finding that question to be outside its purview.

On December 15, 2011, Cox sent Radio Perry a letter stating its intent to end carriage of WPGA on January 17, 2012. Radio Perry then filed the instant action in the Superior Court of Bibb County, seeking to enjoin the termination of carriage and seeking a declaration that the contract "has been cancelled for material and substantive breach on the part of Cox, and that therefore, Cox has no basis to terminate and that Radio Perry remain[s] a 'must carry' local broadcaster which Cox must carry." It also obtained an interlocutory injunction, and it requested a continuing

8

preliminary injunction. Cox answered and moved to dismiss the action for failure to state a claim under OCGA § 9-11-12 (b) (6). It also argued that the trial court lacked jurisdiction to award continued injunctive relief, because that jurisdiction rested with the FCC.

In the order on appeal, the trial court denied Radio Perry's request for a continuing preliminary injunction, concluding that it lacked jurisdiction to award the relief, and it granted Cox's motion to dismiss. However, the trial court entered a separate order reinstating the earlier-granted interlocutory injunction and instructing Radio Perry to move this court to continue that injunction pending appeal. Radio Perry so moved, and we left the injunction in place.

(b) *Evidence could be introduced within the framework of the complaint to show that Radio Perry unilaterally rescinded the contract.*

Radio Perry's complaint in this case rests on its allegation that it rescinded the contract after Cox took actions that constituted a material breach. Georgia law allows equitable rescission of a contract for nonperformance under OCGA § 13-4-62. *Lanier Homes Center v. Underwood*, 252 Ga. App. 745, 746 (1) (557 SE2d 76) (2001). The remedy of rescission for nonperformance "is appropriate when the breach is so substantial and fundamental as to defeat the object of the contract." *Yi v. Li*, 313 Ga.

9

App. 273, 277 (721 SE2d 144) (2011) (citation and punctuation omitted). Radio Perry has alleged facts that could constitute such a breach – namely, that despite the FCC's determination that Radio Perry had "must carry" status entitling it to carriage on Cox's system for the 2009-2011 cycle pursuant to the Cable Act and FCC rules, and despite the contract provision subjecting the parties' obligations to those statutory requirements and rules, Cox nevertheless attempted to terminate carriage before the end of the 2009-2011 cycle.

Cox argues that Radio Perry was not entitled to rescission under OCGA § 13-4-62 because it did not offer to restore Cox to its pre-contract position. OCGA § 13-4-62 provides that a "party may rescind a contract without the consent of the opposite party on the ground of nonperformance by that party but only when both parties can be restored to the condition in which they were before the contract was made." As Cox argues, this means that "[t]he parties must be returned as nearly as possible to the status quo ante." *Southern Prestige Homes v. Moscoso*, 243 Ga. App. 412, 417 (4) (532 SE2d 122) (2000) (citation omitted).

Radio Perry's failure to offer restoration, however, does not defeat its rescission claim as a matter of law. There are circumstances under which a party need not offer restoration in order to rescind a contract, such as "where nothing of any

10

value is received by the party seeking to rescind; and where the amount received under the contract sought to be rescinded may be less than the amount actually due the party seeking to rescind." *Metter Banking Co. v. Millen Lumber & Supply Co.*, 191 Ga. App. 634, 637-638 (2) (a) (382 SE2d 624) (1989) (citations omitted). Moreover,

> [t]he rule that he who desires to rescind a contract must restore whatever he has received under it is one of justice and equity and must be reasonably construed and applied. The object of the rule is theoretically to place the parties in statu quo; but the rule is equitable, not technical, and does not require more than that such restoration be made as is reasonably possible and such as the merits of the case demand.

*Intl. Software Solutions v. Atlanta Pressure Treated Lumber Co.*, 194 Ga. App. 441, 442 (390 SE2d 659) (1990) (citation, punctuation and emphasis omitted). In accord with this principle, we have held that "OCGA § 13-4-62 contains no express statutory requirement for restoration as a condition precedent to rescission for nonperformance." Id.

It is hard to discern from the contract exactly what restoration would have placed Cox in its pre-contract position. Before entering the contract, Radio Perry had "must carry" status requiring Cox to carry WPGA's signal. When Radio Perry sought

11

to terminate the contract, it still had "must carry" status, as determined by the FCC. Consequently, at the time Radio Perry sought to terminate the contract, the contract had effected no change in the parties' obligations regarding carriage. Their positions at that point remained the same.

The trial court, in granting the motion to dismiss, read the contract to demonstrate that Cox had paid Radio Perry $120,000 during the course of the contract and that Radio Perry should have restored these payments. Cox argues in its appellate brief that it paid this amount to Radio Perry, but it cites to nothing in the record to support this statement. And the section of the contract on which the trial court relied for this finding does not show that Cox paid Radio Perry anything; it merely provided that Cox was obligated to make certain license payments to Radio Perry if it remained a "Top-4" station. Moreover, the contract contains a discrepancy regarding the period during which any such payments would be made. The language of the contract creates doubt concerning what, if any payments, Cox made to Radio Perry thereunder, and what value, if any, Cox got in return. At the motion to dismiss stage this doubt must be resolved in Radio Perry's favor. See *Scouten*, 283 Ga. at 73 (1).

Construing the allegations of the complaint most favorably to Radio Perry, especially under notice pleading, it is possible that Radio Perry could introduce

12

evidence within the framework of the complaint excusing it from making restoration as a requirement for a rescinding the contract under OCGA § 13-4-62. For this reason, Radio Perry's failure to offer restoration does not warrant dismissal of its declaratory judgment action. See *Scouten*, 283 Ga. at 73 (2); *Kaplan v. Sanders*, 237 Ga. 132, 134 (1) (227 SE2d 38) (1976).

We are not persuaded by Cox's other arguments in support of the dismissal of the declaratory judgment action. Cox argues that, under the principle of res judicata, the rulings in the earlier proceedings bar this action. None of those earlier proceedings, however, addressed the issue of whether Radio Perry's September 23, 2011, letter effected a unilateral rescission of the contract under OCGA § 13-4-62. Cox also argues that Radio Perry waited too long to try to rescind the contract. But the alleged breach upon which it bases its claim of rescission occurred in June 2011, only three months before Radio Perry notified Cox that it was terminating the contract.

Radio Perry's characterization of its September 23, 2011, letter as a "termination" rather than a "rescission" does not require a different result. Our decision in *Southern Prestige Homes*, supra, 243 Ga. App. 412, does not hold that a letter that uses the word "termination" cannot be a unilateral rescission of a contract.

13

Rather, in finding no unilateral rescission in that case, we also cited the fact the letter "plainly indicate[d] that the subject of rescission was under negotiation." Id. at 417 (4). It is true, as the dissent points out, that the decision in *Mayor & City of Douglasville v. Hildebrand*, supra, 175 Ga. App. 434, recognizes a distinction between terminating a contract and rescinding a contract. But that decision, which is physical precedent only, also recognizes that these terms are commonly used in place of each other. Id. at 436 (1) n. 2. The terms "rescission" and "termination" could be co-extensive under certain circumstances, such as when no payment has been made that could be restored. Given our equitable, rather than technical, application of the restoration requirement, see *Intl. Software Solutions*, 194 Ga. App. at 442, we cannot say, at this point in the litigation, that Radio Perry would be incapable of presenting evidence that such circumstances obtain here.

We acknowledge, as Cox argues, that "[r]escission, as a forfeiture of rights under an otherwise valid contract, is not favored under the law." *Lehman v. Keller*, 297 Ga. App. 371, 373-374 (2) (677 SE2d 415) (2009) (citation and punctuation omitted). But it is also true that

> it is the rare case in which a motion to dismiss for failure to state a
> claim, as opposed to a motion for summary judgment, will provide an

14

appropriate procedural device for securing summary adjudication of the issues raised in a complaint, given that in order to prevail on a motion to dismiss the defendant must show that the plaintiff could not possibly introduce evidence within the framework of his complaint sufficient to sustain a grant of the requested relief.

*Consolidated Govt. of Muscogee County and/or Columbus v. Williams*, 184 Ga. App. 815, 818 (363 SE2d 20) (1987) (citation and punctuation omitted). Because Cox has not met this burden, we must reverse the grant of the motion to dismiss.

2. *Continuing injunctive relief.*

Radio Perry argues that the trial court erred in not granting its request for a continuing injunction (although the trial court subsequently did grant its request for an injunction pending appeal). The trial court based its ruling on its conclusion that, "even if 'rescission' were authorized under the facts alleged in the Complaint, any such rescission of the [contract] would not give [the trial court] authority to order Cox to keep Radio Perry on its system." The trial court reasoned that the injunctive relief sought by Radio Perry would require the trial court to interpret federal "must carry" regulations, something outside the trial court's jurisdiction.

The trial court, however, has the jurisdiction to continue the injunction prohibiting the enforcement of the contract provision allowing Cox to terminate

15

carriage while the parties litigate the declaratory judgment action concerning the contract's validity. Such a ruling would not require the trial court to determine the impact of rescission on Radio Perry's "must carry" or "retransmission consent" status. To the contrary, as the FCC made clear, matters regarding the contract's validity and the enforcement of its terms fell outside of the FCC's purview. Accordingly, we vacate that portion of the order denying the continuing injunctive relief and remand the case for the trial court to determine whether such relief is appropriate, in light of our opinion.

*Judgment vacated in part and reversed in part, and case remanded. Phipps, C. J., Barnes, P. J. and Ellington, P. J., concur. Doyle, P. J., Boggs and Branch, JJ., dissent.*

A13A0399. RADIO PERRY, INC. v. COX COMMUNICATIONS, DO-020
   INC.


DOYLE, Presiding Judge, dissenting.

The majority reverses the trial court's order dismissing Radio Perry's complaint for declaratory judgment, concluding that Radio Perry could introduce evidence within the framework of the complaint sufficient to support its claim for rescission under OCGA § 13-4-62. Because I do not believe that Radio Perry made a timely attempt to rescind the contract, I respectfully dissent.

1. "'A breach of a contract as to a matter so substantial and fundamental as to defeat the object of the contract may authorize a rescission of the contract by the opposite party.'"[1] "As a general rule, rescission must occur prior to, and as a

---

[1] *Mayor & City of Douglasville v. Hildebrand*, 175 Ga. App. 434, 436 (1) (333 SE2d 674) (1985) (physical precedent only).

condition precedent to, the bringing of an action; it is too late to claim rescission by asserting it for the first time in the pleadings."[2]

The September 23, 2011 letter from Radio Perry to Cox specifically stated that it "[was] intended as formal notice of *termination* of the [contract]" based on Cox's substantial and material breach thereof.[3] The letter further states that

> you are notified that based upon [your] material and substantial breaches . . . Radio Perry takes the position that *the contract referred to above is terminated and at an end*. See *Mayor & City of Douglasville v. Hildebrand*.[4] We do not believe that it is necessary to offer to restore the parties to their original position since *we are terminating a contract*. However, we also reserve our right to damages and these will more than offset any claims of "restoration."[5]

Radio Perry unequivocally and explicitly stated that the letter was intended to operate as a termination, and at no point does the letter even mention rescission.[6]

---

[2] *Wender & Roberts, Inc. v. Wender*, 238 Ga. App. 355, 361 (5) (518 SE2d 154) (1999).

[3] (Emphasis supplied.)

[4] 175 Ga. App. at 436 (1).

[5] (Emphasis supplied.)

[6] See *Southern Prestige Homes, Inc. v. Moscoso*, 243 Ga. App. 412, 416-417 (4) (532 SE2d 122) (2000) (holding that a letter stating that parties "have agreed to terminate the contract . . . cannot be said, as a matter of law, to be a unilateral

2

Further, Radio Perry cites therein to *Mayor & City of Douglasville*, a case which recognizes the distinction between terminating a contract that has been substantially performed, as had the contract at issue in this case, and rescission.[7] Therefore, Radio Perry's argument that it can pursue a claim for rescission fails, and I would affirm the trial court's order granting Cox's motion to dismiss.

2.  Because I would affirm the trial court's dismissal of Radio Perry's complaint, I would also affirm the denial of Radio Perry's request for a continuing injunction.

I am authorized to state that Judge Boggs and Judge Branch join in this dissent.

---

recission").

[7] *Mayor & City of Douglasville*, 175 Ga. App. at 436 (1), n. 2.

3