**SECOND DIVISION**
**MILLER, P. J.,**
**MERCIER and COOMER, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**October 23, 2020**

# In the Court of Appeals of Georgia

A20A1318. SALVATI v. DELOACH BROKERAGE, INC.

MERCIER, Judge.

Frank Salvati entered into a one-year exclusive seller listing agreement with Deloach Brokerage, Inc., d/b/a Deloach Sotheby's International Realty ("Deloach"), whereby Deloach would show and offer for sale Salvati's home (the "property") and Salvati would pay Deloach a sales commission. Approximately three months into the one-year listing agreement period, Salvati agreed to sell the property to Steve Been (d/b/a LJB Investment Company, LLC), and the sale closed two days later. Claiming that he had unilaterally terminated the listing agreement, Salvati refused to pay Deloach the sales commission. Deloach sued to recover the commission. The trial

court granted Deloach's motion for summary judgment. Salvati appeals.[1] For the reasons that follow, we affirm the judgment in part and reverse it in part.

> When ruling on a motion for summary judgment, the opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions arising therefrom most favorably toward the party opposing the motion. When reviewing the grant or denial of a motion for summary judgment, this Court conducts a de novo review of the law and the evidence. Contract disputes are particularly well suited for adjudication by summary judgment because construction of contracts is ordinarily a matter of law for the court.

*Southern Prestige Homes v. Moscoso*, 243 Ga. App. 412, 412-413 (1) (532 SE2d 122) (2000) (citations and punctuation omitted).

Viewed favorably to Salvati as respondent on Deloach's motion for summary judgment, the evidence shows the following. On February 23, 2018, Salvati and Deloach (by listing agent Nadia Johnson) executed an "Exclusive Seller Listing Agreement," which grants Deloach the exclusive right to show the property and offer it for sale. The listing agreement provides that Salvati must refer all inquiries concerning the sale of the property to Deloach during the term of the listing

---

[1] The court denied Salvati's motion for summary judgment, but Salvati does not enumerate that ruling as error on appeal.

2

agreement. It further provides that if "during the term of this Agreement [Salvati] enters into a contract (including an option contract) for the sale or exchange of the [subject] Property . . . with any buyer, [Salvati] agrees to pay [Deloach's] commission at closing[.]" The listing period began on February 23, 2018, and continued through February 22, 2019. The agreement states that it constitutes the entire agreement between the parties and that its terms could "not be amended, modified or waived except by the written agreement of Broker and Seller."

On the morning of May 22, 2018, Salvati accepted an oral offer from Been to purchase the property. Been had not learned of the property as a result of Deloach's efforts. No written sales contract was executed, but Salvati stated that he wanted to close the sale quickly and agreed to Been's proposed closing of two days. Been contacted his closing attorney (Jim Benefield) and directed him to close the transaction on May 24, 2018. Been provided the closing attorney with information regarding the terms of the sale (the seller's name, the purchase price, the address, and the closing date); the attorney made a handwritten note of those terms and placed a rush order for the title abstract at 10:41 a.m. on May 22, 2018.

On the afternoon of May 22, 2018, Salvati contacted the listing agent (Johnson) at Deloach and informed her he was coming to Deloach's office that day to sign the

3

"termination agreement." He went to the office around 3:00 p.m. and signed a "Mutual Termination of Brokerage Engagement Agreement." The listing agent prepared the mutual termination agreement document, but no one from Deloach signed it. The sale closed on May 24, 2018. When Salvati refused to pay Deloach a sales commission, Deloach filed the underlying lawsuit. In granting Deloach's motion for summary judgment, the court found that Salvati owed Deloach the commission because Salvati entered into a contract for the sale of the property before he terminated the listing agreement. The court based the amount of the commission on the purported sales price of $1,200,000. We affirm the grant of judgment as to Salvati owing a sales commission, but we reverse the judgment as to the amount of that commission.

1. Salvati contends that the listing agreement provided for unwritten, unilateral termination and that he terminated the agreement before he and Been formed any enforceable sales contract.

(a) As an initial matter, we agree that the listing agreement permitted early termination. An agency is generally revocable at the will of the principal. OCGA § 10-6-33. Salvati was the principal and Deloach the agent. See generally Dolvin Realty Co. v. Holley, 203 Ga. 618, 622 (48 SE2d 109) (1948). While the listing agreement

4

in this case does not set forth the grounds or procedures for early termination by the seller, it does contemplate such termination.

Paragraph B (7) of the listing agreement pertinently provides that if the seller, during the "Protected Period," contracts to sell the property to any buyer who learned of the property during the term of the agreement as a result of the efforts of the broker, the seller shall pay the commission to the broker at the closing of the sale.[2] Further:

> *If this Agreement is terminated by Seller without the express, written consent of Broker*, the Protected Period shall be the time period referenced above plus the number of days that remained on the term of this Agreement *at the time it was terminated early without the express, written consent of Broker*. In such event, the Protected Period shall commence on the date this Agreement was terminated early without the express written consent of Broker. (Emphasis supplied.)

---

[2] The listing agreement provides: "The term 'Protected Period' shall refer to the period with the number of days referenced above [180 days ] following the earlier of either: (a) the expiration of this Agreement; or (b) the date that the Agreement is terminated upon the mutual, written consent of the Broker and Seller." Paragraph B (7).

A reasonable reading of the terms of the listing agreement reveals that Salvati was authorized to terminate the agreement early. Although Deloach relies on *Ben Farmer Realty v. Owens*, 286 Ga. App. 678 (649 SE2d 771) (2007) (physical precedent only), that reliance is misplaced. In *Ben Farmer Realty*, we held that the broker was entitled to a sales commission where the listing agreement was for a specific term and provided no right to terminate early, and the broker procured a ready, willing, and able purchaser. Id. at 681 (3). The opinion, however, is physical precedent only and, further, it does not indicate that the agreement in that case contained any provisions recognizing a right of early termination by the seller. Id. Additionally, Deloach did not procure the buyer in this case.

(b) The key issue here is whether Salvati terminated the listing agreement before he and Been entered into a valid sales contract. Salvati claims that the fact that the oral sales agreement was reached on May 22, 2018 is irrelevant to the timing issue because the agreement was not in writing. However, the sales commission provision of the listing agreement does not require a written sales contract; it merely requires that the seller "enter[] into a contract" for the sale of the property. Paragraph B (6) (a). Salvati further contends that the oral sales agreement was unenforceable under the

6

Statute of Frauds and thus it cannot establish when he entered into an agreement with Been. The contention is without merit.

The Statute of Frauds relevantly provides that for a contract for the sale of land to be binding on the promisor, the promise must be in writing and signed by the party to be charged. OCGA § 13-5-30 (a) (4). But the Statute of Frauds only applies to the parties to the agreement. See *Blanton v. Moseley*, 133 Ga. App. 144 (3) (210 SE2d 368) (1974) ("A plea or contention based on the Statute of Frauds is one personal to the parties to the agreement claimed to be within the statute."); *Waynesboro Planing Mill v. Perkins Mfg. Co.*, 35 Ga. App. 767 (134 SE2d 831) (1926) ("A parol contract unenforceable by reason of the statute of frauds is nevertheless a valid, subsisting contract as between persons other than the contracting parties, for purposes other than a recovery upon it."). As a third party to the sales contract, Deloach is not precluded from relying on the May 22, 2018 oral sales agreement as the event that invoked the sales commission provision of the listing agreement.

Moreover, it is undisputed that Salvati accepted Been's offer on the morning of May 22, 2018, and that later that day he communicated to Deloach his desire to terminate the listing agreement and then signed the termination document. Thus, Salvati entered into a contract for the sale of the property before he terminated the

7

listing agreement, albeit on the same day. Where the precise hour when an act is done is material in ascertaining and determining the relative rights of persons, whenever it becomes important to the ends of justice, the court will consider fractions of a day (i.e., the time) rather than simply the date on which an event occurred. See *Merchants & Mechanics' Bank v. Beard*, 162 Ga. 446, 455-456 (134 SE2d 107) (1926); *Peebles v. Charleston & W. C. R. Co.*, 7 Ga. App. 279, 281-282 (66 SE2d 953) (1910), superceded by statute on other grounds. The sales contract was entered into during the term of the listing agreement, prior to the termination, and the broker's commission was due under Paragraph B (6) (a) of the listing agreement.

Nonetheless, Salvati contends that pursuant to Paragraph B (7) of the listing agreement, the "Protected Period" started on the *date* that he terminated the agreement (May 22, 2018) (and that once the protected period commenced, Deloach was only entitled to a commission if Been learned of the property as a result of Deloach's efforts; he did not). Salvati posits that the date of termination includes May 22, 2018 "in its entirety," such that the termination was effective as soon as that date began. But, as discussed above, the law is not required to disregard the sequence or priority of events over the course of a day; the legal fiction that a day is an indivisible

8

24-hour period commencing at midnight is not always adhered to, and is never adhered to if to do so would work an injustice. *Peebles*, supra at 281.

In this case, the specific time on May 22, 2018 at which the sales contract was entered and the time at which the listing agreement was terminated are material in determining the parties' rights and avoiding an injustice. See *Merchants & Mechanics' Bank*, supra. We hold that the protected period began upon the termination of the listing agreement, which was after the parties entered into the sales contract. Thus, the protected period provision upon which Salvati relies (regarding Deloach's procurement efforts) is inapplicable.

We note that Salvati argues on appeal that he terminated the listing agreement prior to May 22, 2018, and points to his deposition testimony that he told the listing agent "around" May 17 or May 18, 2018 to terminate the agreement but she procrastinated. However, Salvati did not argue below that those earlier dates were material to the case. Instead, Salvati argued in response to Deloach's summary judgment motion that Deloach had done nothing to earn a commission, that Salvati did not enter into a valid sales contract on May 22, 2018, and that he had the right to unilaterally terminate the listing agreement; he cited his signing of the termination form on May 22, 2018 as the relevant termination event. Likewise, in his motion for

9

summary judgment, Salvati argued that the protected period began on the date the agreement was terminated, that "the date of commencement of the Protected Period was May 22, 2018," and that "any agreement to sell the Property which was entered (at any time) on May 22, 2018 was within the Protected Period." Salvati also took the position in his answer and statement of undisputed material facts and theories of recovery that he terminated the agreement on May 22, 2018.

> [O]ur appellate courts are courts for the correction of errors of law committed in the trial court. Routinely, this Court refuses to review issues not raised in the trial court. To consider the case on a completely different basis from that presented below would be contrary to the line of cases holding, "He must stand or fall upon the position taken in the trial court." Fairness to the trial court and to the parties demands that legal issues be asserted in the trial court. If the rule were otherwise, a party opposing a motion for summary judgment need not raise any legal issue, spend the next year thinking up and researching additional issues for the appellate court to address, and require the opposing party to address those issues within the narrow time frame of appellate practice rules.

*Pfeiffer v. Ga. DOT*, 275 Ga. 827, 829 (2) (573 SE2d 389) (2002) (citations and punctuation omitted). Accordingly, we will not consider this argument. See *Wimpy v. Martin*, 365 Ga. App. 55, 58 (1) (b) (846 SE2d 230) (2020); *Weickert v. Home*

10

*Depot USA*, 347 Ga. App. 889, 892 (1) (821 SE2d 110) (2018) (citation and punctuation omitted); *Kolb v. Daruda*, 350 Ga. App. 642, 645 (1) (829 SE2d 881) (2019).

2. Salvati contends the trial court improperly calculated the sales price on which a commission would be owed. The listing agreement provides that the seller agrees to pay the broker at closing six percent of the "sales price."

Salvati asserts that the "true" sales price was $900,000, not $1,200,000, which was the amount on which the court based the commission. According to Salvati, "the true 'price' of the property was, and always remained, $900,000.00 [cit.]. [And,] [a]lthough the settlement statement does reference a value of $1,200,000.00, it also provides a $300,000 credit to the seller, resulting in a total 'price' of $900,000.00"; Salvati does not provide a record citation to the settlement statement. In the closing attorney's handwritten notes that accompany the attorney's affidavit is written the following: "sales price $1,200,000[,] seller credit 300,000." The affidavit of Been, the buyer, states that Salvati accepted his offer to purchase the property for $900,000. An "Affidavit of Seller's Gain" signed by Salvati on May 24, 2018, shows "Sale Price $1,200,000[,] "Less Cost Basis (1,250,000)[,] Less Selling Expenses (350,000)[,] net taxable gain (350,000)[.]"

11

As proof of the sales price of $1,200,000, Deloach relies on a settlement statement and a "PT-61 form filed with the [County] Clerk" as showing a sales price of $1,200,000, but its brief does not include accurate citations to the record for either document, and we have not located them. See Court of Appeals Rule 25 (requiring the parties' briefs to include citations to the record essential to a consideration of the alleged errors).

In sum, the sales price is not clear from the record, and we cannot say, as a matter of law, that Deloach is entitled to a sales commission based on a sales price of $1,200,000. When reviewing the grant of a motion for summary judgment, this Court "do[es] not resolve disputed facts, reconcile the issues, weigh the evidence, or determine its credibility, as those matters must be submitted to a jury for resolution." *Tookes v. Murray*, 297 Ga. App. 765, 765-766 (678 SE2d 209) (2009) (citations omitted). Because a genuine issue of material fact remains as to the price upon which the commission is to be based, the trial court erred in granting summary judgment to Deloach on this issue.

*Judgment affirmed in part and reversed in part. Miller, P. J., and Coomer, J., concur.*

12