**SECOND DIVISION**
**RICKMAN, P. J.,**
**MERCIER and DAVIS, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**July 9**, 2025

# In the Court of Appeals of Georgia

A25A0974. GREEN v. WILHITE et al.

MERCIER, Judge.

Deborah Green sued Carolin Clark Wilhite and Sonrisa, Inc. (collectively, "the defendants") for declaratory relief, specific performance, injunctive relief, and interpleader relating to issues involving the purchase and sale of a home in Carroll County. The trial court granted summary judgment to the defendants, and Green appeals. For reasons that follow, we affirm in part and reverse in part.

Summary judgment is appropriate when no genuine issues of material fact remain and the moving party is entitled to judgment as a matter of law. See OCGA § 9-11-56 (c). We review the grant of summary judgment de novo, construing the

evidence and all reasonable inferences in favor of the non-movant. See *Southern Prestige Homes v. Moscoso*, 243 Ga. App. 412, 412-413 (532 SE2d 122) (2000).

So viewed, the record shows that in 2001, Green entered into a "Contract for Deed" to purchase Wilhite's home in the Lakeview Pines Subdivision for $68,900.[1] The contract provided for financing over a 20-year period:

> [Green] shall pay the sum of $2,000.00 contemporaneously with the execution of this instrument and shall pay the balance of $66,900.00 plus interest of nine percent (9%) per annum as follows: 240 monthly installments of $601.92 each, which amount includes interest, commencing on March 21, 2001, with the last installment payable on February 21, 2021. [Green] shall execute a note [setting] forth the terms of the installment payments and the parties agree that said note is not accepted as payment of the future installments, but only as a memorandum of the indebtedness. Any payment not received within ten days of the due date will be subject to a "late charge" of $50.00 or five percent (5%) of the amount due, whichever is greater. THIS FINANCING MAY NOT BE ASSUMED AND IS DUE AND PAYABLE ON SALE OR TRANSFER TO A THIRD PARTY.

The agreement required Green to "pay all taxes, assessments, water rents, or other impositions that may be legally levied or imposed upon said property after the

---

[1] The contract also include Green's husband, Eddie, who died in 2003. For ease of discussion, we will refer in this opinion only to Green.

execution" of the agreement. If Green failed to make such payments, Wilhite could do so, and "all sums so advanced [could], at the election of [Wilhite], be added to the last installment due hereunder, together with interest thereon at the same rate as provided herein for the unpaid balance of the cash price."

During the life of the agreement, Green was entitled to occupy and possess the property, which she was required to insure and keep in reasonable repair. The installment payments were to "continue until the entire balance of the purchase price [was] paid in full, at which time [Green] [would] be entitled to receive a warranty deed in proper form duly executed by [Wilhite.]" The agreement also provided the following with respect to default by Green:

> In the event of a default as described herein, this Agreement shall, at [Wilhite's] option, be terminated, and [Green] shall, from the date of notification of such termination, be deemed to be tenant unlawfully holding over after the expiration of a lease, and [Wilhite] shall have the right to re-enter and take possession of the premises aforesaid without being liable to any action thereof. If allowed by law, [Green] waives notice to quit and of forfeiture.

> Upon default by [Green] for a period of ten (10) days in any of the other terms and conditions of this Agreement, [Wilhite] is hereby empowered and authorized to maintain summary proceedings for the

removal of [Green] from the premises for the nonpayment of such sums, or for any other breach, with the same force and effect as for the nonpayment of rent as in a landlord and tenant relationship. In that event, and upon procurement by [Wilhite] of a final order in summary proceedings, [Wilhite] shall be deemed relieve[d] and discharged from any claims or obligations of any kind under this Agreement, and all payments made by [Green] and any improvements made to the premises shall be deemed rent for the use and occupancy of the premises during the term of this Agreement, and such payments shall be retained by [Wilhite].

Furthermore, the downpayment paid hereunder shall, in the event of such default, be retained by [Wilhite] as liquidated damage[s] to cover the damages incurred by [Wilhite] due to the resultant loss of [her] bargain, the costs and expenses which it is anticipated [Wilhite] will be required to expend to place the Property in the same condition as when [Green] entered into possession under the terms of the Agreement.

Over the ensuing years, Green made multiple installment payments pursuant to the agreement. She also performed maintenance and upgrade work on the property. She failed, however, to make all scheduled payments, and a significant balance representing principal and taxes remained after February 21, 2021, the date on which payments were supposed to end under the contract.

On May 5, 2022, Wilhite transferred ownership of the property to Sonrisa, a company she owned and for which she served as Chief Executive Officer. The following year, on May 9, 2023, Leigh Wilhite ("Leigh"), who served as attorney for Wilhite and Sonrisa, wrote to Green, asking Green to contact her about "significant past arrearages, primarily from the taxes that have been paid on [Green's] behalf." Approximately one month later, on June 3, 2023, Leigh again wrote Green, asserting that payments remained "considerably behind" and that Green was "in breach of [the] Contract for Deed and in default on the property." The letter further stated:

> Since we spoke in May, I have not received any money you were going to send towards the taxes paid on your behalf, nor have I heard from you regarding any efforts to obtain a loan to pay off your remaining debt. Carole Wilhite owns Sonrisa, Inc., which holds title to the property, and they can no longer finance the property. This correspondence serves to notify you that in accordance with the Contract, the Agreement is hereby terminated, and you are now deemed to be a tenant unlawfully holding over after the expiration of a lease for the premises.

Two weeks later, Green responded to Leigh in writing:

Per our conversation on May 8, 2023, I am prepared to offer $39,520.00 for the purchase of the house. . . . The amount of $39,520.000 includes

everything known to be owned on the house . . . . Please advise in writing if you accept this offer within 7 calendar days of receipt of this letter.

Green has pointed to no evidence that Wilhite accepted this offer, and it appears that it was explicitly rejected via text message. Wilhite also instituted dispossessory proceedings on June 14, 2023, against individuals who were living in the home.[2] Beginning on June 24, 2023, however, Green issued six checks to Wilhite totaling $38,368, all of which were cashed by Wilhite.

Uncertain of her status with respect to the property, Green brought this litigation, seeking a declaratory judgment regarding, among other things, her legal rights under the contract. She sought specific performance of the provision requiring the defendants to transfer the warranty deed to her, as well as an injunction preventing the defendants from taking any action that jeopardized her contractual rights. And she requested permission to interplead into the registry of the court any funds needed to preserve her contract status. The defendants moved for summary judgment, arguing that the contract had been terminated, leaving Green without any contractual rights. The trial court granted the motion, and this appeal followed.

---

[2] Ruel Dobson, Green's current husband, leased the property to these individuals in 2017.

1. Green argues that questions of fact remain as to whether the defendants properly rescinded the contract. Pursuant to OCGA § 13-4-62, "[a] party may rescind a contract without the consent of the opposite party on the ground of nonperformance by that party but only when both parties can be restored to the condition in which they were before the contract was made." See also *Radio Perry, Inc. v. Cox Communications,* 323 Ga. App. 604, 608 (1) (b) (746 SE2d 670) (2013) ("Georgia law allows equitable rescission of a contract for nonperformance under OCGA § 13-4-62."). Noting that the defendants did not offer to restore her to her pre-contract condition by refunding amounts she paid for the property, Green claims that any attempted rescission was ineffective.

Parties to a contract, however, "are free to choose, insert, and agree to whatever provisions they desire in [the] contract unless prohibited by statute or public policy." *Southern Prestige Homes*, 243 Ga. App. at 415 (3) (citation and punctuation omitted); see also *Intl. Greetings USA v. Cammack*, 306 Ga. App. 786, 789 (703 SE2d 386) (2010) ("Where parties are free to draft their own contracts and set agreed-upon terms, courts are not at liberty to revise those terms.") (citation and punctuation omitted). In this case, the contract specifically provided that, if Green defaulted, the

7

contract could be terminated, at which point Green would become a hold-over tenant. Green admitted below that she breached the terms of the contract by failing to make timely payments. And, in accordance with the contract's termination provision, the June 3, 2023 letter informed Green that, based on her breach and resulting default, the agreement "is hereby terminated, and you are now deemed to be a tenant unlawfully holding over after the expiration of a lease for the premises."

We recognize that, at points during this litigation, the defendants have used the term "rescission" instead of "termination." But the contract makes clear that the agreement could be terminated upon default, and the defendants explicitly exercised that option on June 3, 2023. The trial court did not err in finding, as a matter of law, that the defendants terminated the agreement, bringing this dispute within the contractual provisions governing rights and obligations following termination. The equitable remedy of rescission is not at issue here. Compare *Crowell v. Williams*, 273 Ga. App. 676, 677-678 (3) (615 SE2d 797) (2005) ("*Unless otherwise provided by the contract*, the seller is required to return any purchase monies paid where the transaction is in effect canceled or rescinded by the buyer's default in failing to pay the entire purchase price and the seller reasserts possession.") (emphasis supplied).

2. In her second claim of error, Green argues that the trial court "erred by failing to order the proper relief based on [the defendants] rescinding the Contract for Deed." Again, this case involves termination of a contract pursuant to the agreement's express terms, not equitable rescission. Moreover, although Green claims that she engaged in a reasonable, good faith effort to cure her breach by sending additional checks to Wilhite beginning on June 24, 2023, the contract had been terminated by the time she made those payments. Her assertion that she is entitled to a warranty deed under the contract, therefore, lacks merit.

Nevertheless, questions remain regarding the rights and obligations of the parties *following* the termination. The contract establishes post-termination procedures, including the use of summary proceedings to remove Green from the premises. Those procedures further provide:

> upon procurement by [Wilhite] of a final order in summary proceedings, [Wilhite] shall be deemed relieve[d] and discharged from any claims or obligations of any kind under this Agreement, and all payments made by [Green] and any improvements made to the premises shall be deemed rent for the use and occupancy of the premises during the term of this Agreement, and such payments shall be retained by [Wilhite].

The defendants have pointed to no evidence that a final order relating to summary proceedings has been entered with respect to the property. Although they instituted dispossessory proceedings against individuals living on the premises, that action apparently was dismissed. At this point, therefore, it is unclear whether the post-termination procedures have been followed and/or completed. We further note that, after terminating the contract, the defendants accepted a significant amount of money from Green. The trial court's order does not address the status of those funds.[3]

Green's complaint requested declaratory relief regarding her contractual status in this case. The trial court properly found that the defendants terminated the contract on June 3, 2023. But it failed to address the parties' rights and obligations following the termination, and the defendants have not demonstrated that they are entitled to summary judgment on this issue. Accordingly, to the extent the trial court granted the defendants summary judgment on any issue other than termination of the contract, we reverse. See *AFLAC v. Chubb & Sons*, 260 Ga. App. 306, 306 (1) (581 SE2d 317)

---

[3] Green argues on appeal that the defendants were unjustly enriched by these post-termination payments. She does not claim, however, that the defendants' decision to accept such funds resulted in an accord and satisfaction or created a new agreement relating to the property. See OCGA § 13-4-101 (discussing accord and satisfaction).

(2003) ("If the movant for summary judgment fails to show an entitlement to a judgment as a matter of law, with the evidence viewed in favor of the nonmoving party, a prima facie case has not been shown.").

*Judgment affirmed in part and reversed in part. Rickman, P. J., and Davis, J., concur.*