FILED

03/07/2017

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
January 26, 2017 Session

IN RE ESTATE OF MADELYN CLEVELAND

Appeal from the Probate Court for Unicoi County
No. PR766     David R. Shults, Judge

No. E2016-01624-COA-R3-CV

In this probate matter, the decedent was a party to divorce proceedings in Georgia with her estranged husband at the time of her death.  The decedent and her husband had executed a separation agreement as part of those proceedings, wherein they agreed that each party would individually maintain ownership of specified marital assets and execute any documents necessary to effectuate the agreement as to each asset.  The decedent passed away before the respective transfers of property were made, and her personal representative filed an action seeking to enforce the terms of the settlement agreement. The trial court conducted a hearing in this matter and determined that the agreement had been rescinded by the husband, such that all jointly owned marital assets passed to him at the decedent's death.  The personal representative has appealed.  We determine that the husband did not have a proper basis for rescission of the settlement agreement and that any purported rescission was ineffective.  We therefore reverse the trial court's order dismissing the petition filed by the personal representative and awarding ownership of all marital assets to the husband.  We remand this matter to the trial court for further proceedings regarding enforcement of the agreement.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate Court
Reversed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

Elijah T. Settlemyre and Ronald W. Woods, Greeneville, Tennessee, for the appellant, Mary Lee Fennessy, as personal representative of the Estate of Madelyn Cleveland.

Russell W. Adkins and William S. Lewis, Kingsport, Tennessee, for the appellee, Donald Cleveland.

**OPINION**

I.  Factual and Procedural Background

Madelyn Cleveland ("Decedent") passed away on September 22, 2014, following a battle with cancer.  At the time of her death, Decedent was involved in divorce proceedings in Georgia with her estranged spouse, Donald Cleveland.  Decedent and Mr. Cleveland had been separated since July 2012 and had executed a separation agreement ("Agreement") dividing their marital assets on July 13, 2014.  This Agreement provided, *inter alia*, that Decedent was to retain as her property the parties' jointly owned residence in Erwin, Tennessee ("Tennessee Residence"), as well as a Fidelity Individual Retirement Account ("Fidelity IRA") that was opened during the marriage in Decedent's name.  Mr. Cleveland was to retain as his property the parties' jointly owned residence in Georgia ("Georgia Residence") and a separate financial account.  Both parties were to execute quitclaim deeds to effectuate the respective transfers of real property.  Mr. Cleveland was also to receive certain items of personalty that were housed in the Tennessee Residence and was to maintain ownership of his vehicle, which was titled jointly.  The Agreement further provided that each party would execute "any documents required to effect the terms of this Agreement and to perform any other legal act required to implement or effect the terms and intent of this Agreement," and that the Agreement would be governed by Georgia law.

Prior to her death, Decedent had executed a last will and testament wherein she devised her real property to her daughter, Mary Lee Fennessy, and named Ms. Fennessy as her personal representative.  Decedent bequeathed her Fidelity IRA and other personal property to her sister, Brenda Tinker.  Following Decedent's death, Ms. Fennessy probated Decedent's will in the Unicoi County Probate Court ("the trial court").  Ms. Fennessy, on behalf of Decedent's estate ("the Estate"), requested that the trial court enter a temporary restraining order prohibiting Mr. Cleveland from entering the Tennessee Residence and removing Decedent's personalty or conveying the residence to a third party.  The trial court granted the temporary restraining order.

Ms. Fennessy also filed a petition seeking a declaratory judgment on behalf of the Estate to determine the ownership of the Tennessee Residence and the Fidelity IRA.  Mr. Cleveland filed an answer, stating that the Agreement was "never executed due to delays and inappropriate demands by Mrs. Cleveland's daughter, Mary Lee Fennessy, who handled Madelyn Cleveland's affairs during her illness."  Mr. Cleveland subsequently

2

filed an amended answer, stating that he had rescinded the agreement on September 10, 2014, due to Decedent's or Ms. Fennessy's non-performance.

Mr. Cleveland thereafter filed a counter-complaint against the Estate and third-party complaint against Ms. Fennessy, in her individual capacity and as personal representative of the Estate.[1]  Mr. Cleveland alleged, *inter alia*, that Ms. Fennessy had knowingly given false information to the funeral home, thereby causing Decedent's certificate of death to incorrectly state that she was divorced.  Mr. Cleveland also alleged that Ms. Fennessy had used this "fraudulent" death certificate to improperly withdraw funds from the Fidelity IRA.  Mr. Cleveland further alleged that Ms. Fennessy, on behalf of the Estate, had wrongfully obtained a temporary restraining order denying him access to the Tennessee Residence even though legal title to the residence passed to him by operation of law upon Decedent's death.  Mr. Cleveland sought a temporary injunction prohibiting distribution of the funds from the Fidelity IRA.  Over Ms. Fennessy's objection, the trial court allowed the filing of the counter-complaint and third-party complaint.  The court also entered a temporary injunction, ordering $58,000.00 to be moved from the Estate's account into a separate account.  Mr. Cleveland thereafter amended his counter-complaint and third-party complaint pursuant to an agreed order, adding additional allegations against Ms. Fennessy in both her individual and representative capacities.

The trial court conducted a bench trial on November 9, 2015, regarding the Estate's petition for declaratory judgment and Mr. Cleveland's amended counter-complaint and third-party complaint.  The trial court subsequently entered a judgment on March 3, 2016, dismissing the Estate's petition against Mr. Cleveland and also dismissing Mr. Cleveland's third-party complaint against Ms. Fennessy individually.  The court awarded a judgment to Mr. Cleveland on his counter-claim against the Estate in the amount of $57,185.66.  The court further determined Mr. Cleveland to be the owner of the Tennessee Residence.

The trial court made separate findings of fact and conclusions of law, which were incorporated into its judgment.  The court found that Decedent and Mr. Cleveland signed the Agreement on July 13, 2014, without undue influence or duress.  The court also determined, however, that with regard to the transfers of real property, the Agreement required the execution of quitclaim deeds in order to effectuate such transfers and therefore did not automatically divest title from Mr. Cleveland.  The trial court found that the Tennessee Residence was titled to Decedent and Mr. Cleveland as tenants by the

---

[1] We note that the trial court later dismissed with prejudice the claims against Ms. Fennessy in her individual capacity.  Mr. Cleveland did not appeal the dismissal of those claims.  Ms. Fennessy filed this appeal solely in her capacity as personal representative of the Estate.

entirety, which established that title would immediately pass to the surviving spouse, Mr. Cleveland, upon Decedent's death pursuant to Tennessee law. As the court noted with regard to the transfers of real property, "the agreement wasn't the [] final say . . . ."

Concerning the Fidelity IRA, the trial court determined that the Agreement did not specifically provide that Mr. Cleveland waived his rights as a beneficiary. The court found that although Decedent had taken steps to remove Mr. Cleveland as named beneficiary, the IRA agreement provided that the IRA would pass to the surviving spouse if no beneficiary was designated.[2] The court noted that although the Agreement provided that Decedent would retain ownership of the account, "who retains the ownership of the account is one issue but [who is] named beneficiary on the account is an entirely separate issue." The court thus determined that the funds withdrawn from the Fidelity IRA should be restored to Mr. Cleveland.

The trial court initially determined that the Agreement had not been rescinded. When announcing its findings of fact and conclusions of law to the parties, the trial judge stated:

> I don't think that the separation agreement was rescinded. The letter, which Mr. Cleveland introduced, authored by his lawyer from Georgia had language to the effect in it. And I can't remember what the Exhibit number is, Gentlemen, but had language to the effect that the separation agreement was rescinded. But in the immediately following paragraph it stated that, language to the effect, hey, let's get together and get this thing worked out. Language which was, which tended to demonstrate that Mr. Cleveland wanted to, not reconcile the marriage but reconcile the settlement process and get the agreement back on track.

The trial court also determined, however, that "it was the intention of the parties that the separation agreement would be fully implemented upon the divorce and upon the execution of certain other documents . . . ." As a result of these findings, the trial court dismissed the petition of the Estate and awarded ownership of the Tennessee Residence and the funds from the Fidelity IRA to Mr. Cleveland. The court thereafter denied Mr. Cleveland's request for prejudgment interest.

The Estate subsequently filed a motion to alter or amend, arguing that the trial court should have enforced the Agreement's provision requiring Mr. Cleveland to convey his interest in the Tennessee Residence. Ms. Fennessy, as personal representative,

---

[2] Ms. Fennessy presented evidence at trial that Decedent had electronically removed Mr. Cleveland as the beneficiary on the Fidelity IRA before her death but had failed to designate a new beneficiary.

4

asserted that she possessed the right to enforce the Agreement and seek an order requiring Mr. Cleveland to execute a quitclaim deed as provided in the Agreement. On July 19, 2016, the trial court filed supplemental findings of fact and conclusions of law, which the court stated would supersede its earlier findings and conclusions to the extent any conflict existed. The trial court altered its earlier finding regarding the Agreement, determining that Mr. Cleveland had validly rescinded the contract. The trial court found that Decedent did not "substantially comply with the spirit and letter of the contract or complete her obligations within a reasonable time," thus affording a basis to allow Mr. Cleveland to rescind pursuant to Georgia law. The court also found that the "Georgia divorce court never approved the Separation Agreement, and neither party performed their obligations under the Separation Agreement." The court determined that the Agreement was rescinded by letter dated September 10, 2014, following a sixty-day period when "Mr. Cleveland . . . made multiple attempts to arrange to pick up Mr. Cleveland's personal belongings." The trial court accordingly denied the motion to alter or amend. The Estate timely appealed.

## II. Issues Presented

The Estate presents the following issues for our review, which we have restated slightly:

1. Whether the trial court erred by determining that Mr. Cleveland properly rescinded the Agreement and was excused from performance thereunder.

2. Whether the trial court erred by denying the Estate's request that Mr. Cleveland be required to execute and deliver a quitclaim deed to the Tennessee Residence to quiet title in the name of the will beneficiary.

3. Whether the trial court erred by failing to find that Mr. Cleveland, in the Agreement, waived his interest as a beneficiary in the Fidelity IRA.

4. Whether the trial court erred by admitting parol evidence in the form of testimony presented by Mr. Cleveland and his attorney regarding the Agreement and rescission.

### III. Standard of Review

In this action, the trial court applied Georgia substantive law pursuant to the choice of law provision contained in the Agreement. As this Court has previously explained with regard to the requisite analysis concerning choice of law:

> "Tennessee will honor a choice of law clause if the state whose law is chosen bears a reasonable relation to the transaction and absent a violation of the forum state's public policy." *Bourland, Heflin, Alvarez, Minor & Matthews, PLC v. Heaton,* 393 S.W.3d 671, 674 (Tenn. Ct. App. 2012) (citing *Wright v. Rains,* 106 S.W.3d 678, 681 (Tenn. Ct. App. 2003)). Here, the parties chose the law of Nebraska, where the Theater is headquartered, to govern the Contract, and both parties agree that the choice of law clause is valid and enforceable.
>
> Despite the parties' choice of law, however, Tennessee law governs matters of procedure under our conflict of law principles. *In re Healthways, Inc. Derivative Litig.,* No. M2009-02623-COA-R3-CV, 2011 WL 882448, at *3 (Tenn. Ct. App. Mar. 14, 2011); *Rampy v. ICI Acrylics, Inc.,* 898 S.W.2d 196, 198 n.2 (Tenn. Ct. App. 1994). Matters of procedure are governed by the law of the forum. *State ex rel. Smith v. Early,* 934 S.W.2d 655, 658 (Tenn. Ct. App. 1996). In other words, we apply our own procedural rules even if the law of another state governs the substantive issues. *See, e.g., Beach Cmty. Bank v. Labry,* No. W2011-01583-COA-R3-CV, 2012 WL 2196174, at *3 n.6 (Tenn. Ct. App. June 15, 2012); *Standard Fire Ins. Co. v. Chester O'Donley & Assocs., Inc.,* 972 S.W.2d 1, 5 (Tenn. Ct. App. 1998). The rationale for this distinction is aptly stated in the *Restatement (Second) of Conflict of Laws* § 122, cmt. a (1971) as follows:
>
>> Each state has local law rules prescribing the procedure by which controversies are brought into its courts and by which the trial of these controversies is conducted. These rules for conducting lawsuits and administering the courts' processes vary from state to state. The forum has compelling reasons for applying its own rules to decide such issues even if the case has foreign contacts and even if many issues in the case will be decided by reference to the local law of another state. The forum is more concerned with how its judicial machinery functions and how its court processes are administered than is any other state. Also, in matters of judicial administration, it

would often be disruptive or difficult for the forum to apply the local law rules of another state.

"Enormous burdens are avoided when a court applies its own rules, rather than the rules of another state, to issues relating to judicial administration, such as the proper form of action, service of process, pleading, rules of discovery, mode of trial and execution and costs." *Id.* However, the line is not always clear regarding which matters are substantive and which are procedural.

In Tennessee, substantive law has been described as "'that part of the law which creates, defines, and regulates rights; that which creates duties, rights, and obligations; the law which relates to rights and duties which give rise to a cause of action.'" *Solomon v. FloWarr Mgmt., Inc.*, 777 S.W.2d 701, 705 (Tenn. Ct. App. 1989) (quoting *Spencer Kellogg & Sons, Inc. v. Lobban*, 204 Tenn. 79, 315 S.W.2d 514, 518 (1958)). We also consider whether the law is "substantive in effect" even if it would initially appear to be "procedural in form." *Gordon's Transports, Inc. v. Bailey*, 41 Tenn. App. 365, 294 S.W.2d 313, 324 (1956). Where a rule from another state

is such that it goes to the very existence of the contract or the right of the plaintiff to recover, or of the defendant to resist recovery, whether that rule is to be denominated as one of remedy or of substance, the fact is that it affects the substantive rights of the parties and should therefore be applied, notwithstanding a contrary rule of the forum.

*Id.* (citing 11 Am. Jur. pages 523-24, Conflict of Laws, Sec. 203).

*Boswell v. RFD-TV the Theater, LLC*, 498 S.W.3d 550, 556-57 (Tenn. Ct. App. 2016), *perm. app. denied* (Tenn. Aug. 18, 2016).

## IV. Rescission of Agreement

Ms. Fennessy, on behalf of the Estate, asserts that the trial court erred in determining that Mr. Cleveland had properly rescinded the Agreement. We note at the outset that the Agreement expressly states that it is to be construed and governed in accordance with Georgia law. This Court should honor the Agreement's provision regarding choice of law if the chosen state "bears a reasonable relation to the transaction and absent a violation of the forum state's public policy." *See Boswell,* 498 S.W.3d at

556. We determine that such a reasonable relation exists in this matter because Decedent and Mr. Cleveland had resided together in Georgia, jointly owned real property there, and had divorce proceedings pending in Georgia when the Agreement was executed.

Although the Georgia divorce proceedings abated upon Decedent's death, *see Segars v. Brooks*, 284 S.E.2d 13, 14 (Ga. 1981), we note that the Agreement can still be evaluated and enforced pursuant to ordinary rules of contract construction based on Georgia precedent. *See Guthrie v. Guthrie*, 594 S.E.2d 356, 358 (Ga. 2004). In *Guthrie*, the husband and wife were involved in divorce proceedings and had executed a settlement agreement. *Id*. at 357. Before the agreement could be enforced or the divorce entered, however, the husband died. *Id*. Although the unadjudicated divorce proceeding was dismissed, the wife subsequently filed an action seeking to enforce the settlement agreement. *Id*. The trial court granted summary judgment in favor of the husband's estate. *Id*.

The Georgia Court of Appeals reversed the trial court's grant of summary judgment, determining that the trial court should have treated the matter as a contractual dispute rather than rejecting the agreement because it arose out of an unadjudicated divorce proceeding. *Id*. On subsequent appeal, the Georgia Supreme Court affirmed the decision of the Court of Appeals, determining that, "the interpretation of a settlement agreement that a party seeks to enforce outside of the parameters of a divorce proceeding is strictly governed by the rules of contract construction." *Id*. at 358. The Court further stated:

> [T]he enforceability of a settlement agreement disposing of property upon marital separation does not turn on whether both parties to the contract survive or on whether a final judgment of divorce is entered.

*Id*. The Court thus ruled that the trial court should have analyzed the parties' agreement pursuant to ordinary rules of contract construction rather than analyzing the agreement pursuant to the rules applicable when determining whether to incorporate a settlement agreement into a final decree of divorce. *Id.*

Similarly, in the case at bar, the Agreement was enforceable pursuant to ordinary rules of contract construction despite the absence of a final divorce judgment. *See id*. Although the trial court did not expressly make that determination, such ruling is implied by the court's finding that the contract had been rescinded. In determining that Mr. Cleveland had rescinded the Agreement, the trial court relied upon certain Georgia statutes, providing:

8

A party may rescind a contract without the consent of the opposite party on the ground of nonperformance by that party but only when both parties can be restored to the condition in which they were before the contract was made.

Ga. Code Ann. § 13-4-62.

Where the conditions as to performance of a contract are concurrent, if one party offers to perform and the other refuses to perform, the first shall be discharged from the performance of his part of the contract and may maintain an action against the other.

Ga. Code Ann. § 13-4-22.

If the nonperformance of a party to a contract is caused by the conduct of the opposite party, such conduct shall excuse the other party from performance.

Ga. Code Ann. § 13-4-23.

As the Estate notes, the case law interpreting these statutory provisions clearly states that "to justify rescission, there must be a material nonperformance or breach by the opposing party." *Vidalia Outdoor Prods., Inc. v. Higgins*, 701 S.E.2d 217, 219 (Ga. Ct. App. 2010). "'Generally, one injured by [a] breach of a contract has the election to rescind or continue under the contract and recover damages for the breach.'" *Forsyth Cnty. v. Waterscape Servs., LLC*, 694 S.E.2d 102, 111 (Ga. Ct. App. 2010) (quoting *W. Contracting Corp. v. State Highway Dep't.,* 187 S.E.2d 690 (Ga. Ct. App. 1972)). "If the breach is not material, the party is limited to a claim for damages and cannot rescind the contract." *Forsyth Cnty.*, 694 S.E.2d at 111. As the Georgia Court of Appeals has further explained:

A breach is material when it is so substantial and fundamental as to defeat the object of the contract. In other words, to trigger the right to rescission, the act failed to be performed must go to the root of the contract. A breach which is incidental and subordinate to the main purpose of the contract does not warrant termination.

*Vidalia*, 701 S.E.2d at 219 (quoting *Forsyth Cnty*, 694 S.E.2d at 112). *See also Radio Perry, Inc. v. Cox Commc'ns, Inc.*, 746 S.E.2d 670, 675 (Ga. Ct. App. 2013).

In addition, Georgia precedent provides:

> [T]he right of a party to rescind a contract depends upon that party's not having breached the contract himself. "The party who seeks to rescind a contract because of the other's default must show that he has done all that he is required to do in order to entitle himself to a performance of it by the other party. Moreover, a party seeking to rescind must show that he was free from default in relation to the obligation which he claims the other party failed to perform. The right to rescind or terminate a contract on the ground of failure of performance by the opposite party belongs only to the party who is free from substantial default himself, and a party who has substantially broken the contract cannot rescind it on the ground that the other party subsequently refused or failed to perform." 17 Am. Jur. 2d 979, Contracts, s 503.

*Martin v. Rollins, Inc.*, 226 S.E.2d 771, 773 (Ga. Ct. App. 1976), *aff'd,* 231 S.E.2d 751 (Ga. 1977); *see also Williams v. Dienes Apparatus, Inc.*, 407 S.E.2d 408, 410 (Ga. Ct. App. 1991).

Mr. Cleveland contends that his performance required by the Agreement was excused and rescission of the Agreement was warranted because Decedent, through her attorney-in-fact, Ms. Fennessy, was not willing to perform her obligations thereunder.[3] The Estate maintains that Ms. Fennessy offered to perform Decedent's obligations but that it was, in fact, Mr. Cleveland who refused to comply. The Estate concedes that despite the Agreement's lack of a specified time for performance, Georgia law imposes a construction requiring that performance occur within a reasonable time. *See* Ga. Code Ann. § 13-4-20 ("Performance, to be effectual, must be accomplished by the party bound to perform . . . and completed within a reasonable time."). The Estate contends, however, that Ms. Fennessy's offer to perform was within a reasonable time and was rejected by Mr. Cleveland.

The record demonstrates that the Agreement was initially forwarded via electronic mail ("email") on July 10, 2014, by Mr. Cleveland's Georgia attorney, Reid Zeh, to Decedent's Georgia attorney, Lee Ashmore, for Decedent's approval. In that correspondence, Mr. Zeh stated that Mr. Cleveland would "like to retrieve his belongings in Tennessee prior to the filing of the Final Judgment, and is available to do this the week of July 21-27." Mr. Zeh also requested that Decedent sign the title to Mr. Cleveland's vehicle when Mr. Cleveland retrieved his personalty. The Agreement was executed on

---

[3] Ms. Fennessy testified that she had been appointed Decedent's attorney-in-fact and that Decedent, who was very ill at the time, had asked Ms. Fennessy to act on Decedent's behalf with regard to effectuating the Agreement.

July 13, 2014.  Mr. Cleveland thereafter sent an email to Mr. Zeh, Mr. Ashmore, and Ms. Fennessy on July 28, 2014, stating that he had been "advised that the 27th or 28th was not acceptable" and asking that he be provided a Sunday or Monday date when he could travel to Tennessee to reclaim his possessions.

On July 30, 2014, Ms. Fennessy responded to Mr. Cleveland via email and informed him that she had "limited internet access" and would soon provide him with possible dates in "mid- to late August."  Ms. Fennessy explained at trial that she was out of town visiting relatives at the time she received Mr. Cleveland's email and did not have her calendar in her possession.  Ms. Fennessy also related that she had no Internet access at the location where she was staying and had to travel to another relative's home to retrieve her emails.  Within hours of Ms. Fennessy's response, Mr. Zeh sent an email to Mr. Ashmore, stating that Mr. Cleveland was "frustrated" and had instructed Mr. Zeh to rescind the Agreement if Mr. Cleveland could not reclaim his personalty by August 11, 2014.  Mr. Ashmore promptly replied, asserting that Ms. Fennessy was attempting to set a date with Mr. Cleveland to accomplish this task.  Also on July 30, 2014, Mr. Cleveland sent an email to Ms. Fennessy, stating that he was currently out of town and that the best August dates for him would be August 10 or 11.

The following day, July 31, 2014, Ms. Fennessy replied to Mr. Cleveland's email and again informed him that she would provide him with dates as soon as she could.  At trial, Ms. Fennessy explained that she was still traveling at that time.  Mr. Zeh sent an email to Mr. Ashmore on August 1, pressing the need for a "date certain" and expressing frustration regarding Ms. Fennessy's "generic responses."  Following her return home, Ms. Fennessy sent a reply to Mr. Cleveland on August 4, 2014, informing him that the earliest date she would be available to meet would be August 24, 2014, due to other previously planned activities.  Later that day, Mr. Cleveland replied that he did not wish to travel to the area the weekend of August 24 due to a scheduled automobile racing event and the attendant lack of lodging possibilities.  Mr. Cleveland proposed other dates for the meeting, including September 7, 2014.  Ms. Fennessy quickly responded that September 7 was an agreeable date.

Ms. Fennessy sent an email later in the day on August 4, 2014, asking Mr. Cleveland to provide proof at their September 7 meeting that he had refinanced the mortgage on the Georgia Residence and also to sign the quitclaim deed on the Tennessee Residence.  After receiving a copy of this email, Mr. Zeh inadvertently sent a response to Ms. Fennessy that was intended for Mr. Cleveland, wherein he stated that Ms. Fennessy was not a lawyer or a party to the matter at hand and that he and Mr. Ashmore would handle the transfers of property.  Mr. Zeh concluded his email by stating, "Don't let this idiot ruin your day."  Following her receipt of Mr. Zeh's email, Ms. Fennessy responded that she would be happy to allow the lawyers to handle communications from that point

forward. The record contains no documentation demonstrating that the meeting date of September 7 was confirmed by either Mr. Zeh or Mr. Cleveland in a timely fashion. Mr. Cleveland admitted at trial that the September 7 date was not timely confirmed and that no further communications flowed between Ms. Fennessy and him after August 4, 2014.

Thereafter, Mr. Ashmore sent an email to Mr. Zeh on August 6, 2014, attaching a quitclaim deed for the Tennessee Residence for Mr. Cleveland's signature. Receiving no response, Mr. Ashmore sent correspondence to Mr. Zeh on August 13 and 18, 2014, inquiring about the status of the quitclaim deed. On August 29, 2014, Mr. Zeh sent an email to Mr. Ashmore, stating that he could not find the quitclaim deed and asking Mr. Ashmore to resubmit it. Mr. Zeh and Mr. Cleveland both testified at trial, however, that Mr. Cleveland would not agree to sign the quitclaim deed until he had successfully retrieved his personal property and, even then, only if Mr. Zeh agreed to hold the quitclaim deed until the final divorce judgment was entered. Mr. Zeh testified that it was "customary" in Glynn County, Georgia, for the deeds to be signed and held by the attorneys until the final divorce hearing. Mr. Cleveland testified that this custom was explained to him by Mr. Zeh and was the only course he was willing to follow regarding the deeds.

It was not until September 5, 2014, that Mr. Zeh sent an email to Mr. Ashmore, seeking to confirm the meeting date of September 7, 2014. Ms. Fennessy explained that by that time, having never received any form of confirmation of the meeting date, she had committed to attend a church function on September 7. Mr. Zeh's email also stated that he would have Mr. Cleveland execute the quitclaim deed to the Tennessee Residence and hold it until the final divorce hearing, with the understanding that Ms. Fennessy would do the same regarding the Georgia Residence. Mr. Ashmore sent a responsive email later that day, asking Mr. Zeh to explain why the transfers set forth in the agreement could not be accomplished before the divorce was entered and why the divorce hearing could not be scheduled sooner. Apparently, neither party appeared for the proposed September 7 meeting because of the lack of confirmation and agreement regarding execution of the deeds.

On September 10, 2014, Mr. Zeh sent a letter to Mr. Ashmore, declaring that Mr. Cleveland had instructed him to rescind the Agreement. Mr. Zeh characterized the delay of sixty days in retrieving Mr. Cleveland's personalty as "inexcusable." Mr. Zeh reminded Mr. Ashmore that if Decedent passed away before the divorce was finalized, all of the jointly owned real property would pass to Mr. Cleveland. Mr. Zeh then stated:

> Tell your client and daughter to set up a date and time immediately for Mr. Cleveland to gather his belongings. Once he has those items, I will MAKE him adhere to the Separation Agreement previously entered into.

12

He has repeatedly agreed to execute a quit-claim deed on the Tennessee property once he has his personal items.  If she doesn't make arrangements, and your client dies in the interim, Mr. Cleveland will not only get his items but also the house itself.

(Emphasis in original.)  Mr. Zeh acknowledged at trial that although his letter mentioned rescission in one paragraph, it reaffirmed the Agreement in the next paragraph.  Mr. Ashmore responded via letter on that same date, expressing confusion regarding a basis for rescission because Mr. Cleveland had not fulfilled any of his obligations pursuant to the Agreement.

On September 11, 2014, Mr. Zeh sent a letter to Mr. Ashmore, acknowledging the receipt of his letter and pleadings.[4]  Mr. Zeh further stated:

Since your client (or more likely her "representative") is now coming to Glynn County on October 7th, 2014 for the hearing you have scheduled, we would appreciate it if she would bring Mr. Cleveland's belongings with her.  In the event those items are delivered, chances are pretty favorable that the parties could finalize the divorce that day too.

* * *

I remain committed to resolving this matter amicably as I have been since April of 2013 when the Complaint was filed.

Simply bizarre.

Mr. Zeh admitted at trial that this letter again requested that the parties proceed pursuant to the Agreement.  Mr. Ashmore responded via letter the following day, stating that Ms. Fennessy was unable to transport Mr. Cleveland's furniture on October 7 but that she would be willing to obtain an estimate for having his belongings moved to the Georgia Residence.  Before the October 7 hearing date arrived, Decedent passed away on September 22, 2014.

The Estate asserts that the facts, as reviewed above, do not support the trial court's determination that Mr. Cleveland should be allowed to rescind the Agreement based on Decedent's or Ms. Fennessy's nonperformance or breach.  We agree.  As the Estate points out, Mr. Cleveland failed or refused to perform his obligations under the

---

[4] Mr. Zeh testified that Mr. Ashmore had filed a motion for the Georgia court to appoint a trustee to sign the quitclaim deed on Mr. Cleveland's behalf.

Agreement and therefore could not show that he was free from default. Both Mr. Cleveland and Mr. Zeh admitted at trial that Mr. Cleveland had refused to sign a quitclaim deed until he had regained possession of his personalty. Furthermore, Mr. Cleveland and Mr. Zeh testified that Mr. Cleveland refused to allow the deeds to be exchanged until the divorce judgment was entered. Mr. Zeh acknowledged that he had informed Mr. Cleveland that the common course of practice in the county in which the divorce was filed was for the deeds to be held by counsel until the final divorce hearing. Mr. Cleveland testified that this was the only course he would accept, despite the lack of any such requirement in the Agreement. As such, Mr. Cleveland's own refusal to perform within the same time period would prevent him from rescinding the separation agreement. *See Martin*, 226 S.E.2d at 773 ("[A] party who has substantially broken the contract cannot rescind it on the ground that the other party subsequently refused or failed to perform.").

Furthermore, the trial court expressly found in its supplemental findings of fact that "neither party performed their obligations under the Separation Agreement." (Emphasis added.) We emphasize the *Martin* court's holding:

> "The party who seeks to rescind a contract because of the other's default must show that he has done all that he is required to do in order to entitle himself to a performance of it by the other party. Moreover, a party seeking to rescind must show that he was free from default in relation to the obligation which he claims the other party failed to perform. The right to rescind or terminate a contract on the ground of failure of performance by the opposite party belongs only to the party who is free from substantial default himself . . . ."

*Martin*, 226 S.E.2d at 773 (quoting 17 Am. Jur. 2d *Contracts* §503).

The Georgia statutory provisions relied upon by the trial court and the cases construing same also lead us to conclude that Mr. Cleveland maintained no proper basis for rescission. Georgia Code Annotated § 13-4-62 provides that a party may rescind on the ground of "nonperformance," but this term has been construed to mean a material breach. *See Vidalia*, 701 S.E.2d at 219. We determine that the above-described delays in performance do not constitute a breach on Decedent's or Ms. Fennessy's part. At most, the purported "delays" were equally due to Mr. Cleveland's lack of cooperation and absolute refusal to perform his obligations pursuant to the Agreement until his demands had been satisfied. Similarly, Georgia Code Annotated §§ 13-4-22 and -23 provide that Mr. Cleveland's refusal to perform would, in turn, discharge Decedent's obligation to perform. Finally, although Georgia Code Annotated § 13-4-20 provides that performance, "to be effectual, must be accomplished by the party bound to perform . . . and completed within a reasonable time," we do not find that the short delay in response

by Ms. Fennessy, amounting to no more than a few days' deferral, was unreasonable given the circumstances.

Even assuming, *arguendo*, that Mr. Cleveland had a proper basis for rescinding the Agreement, we determine that the documentary evidence belies Mr. Cleveland's claim of rescission. Mr. Zeh's letter of September 10, 2014, stating that Mr. Cleveland had instructed him to rescind the Agreement, also indicated that if Mr. Cleveland were allowed to immediately retrieve his belongings, Mr. Zeh would "MAKE [Mr. Cleveland] adhere to the Separation Agreement previously entered into. He has repeatedly agreed to execute a quit-claim deed on the Tennessee property once he has his personal items." Furthermore, in his September 11, 2014 letter, Mr. Zeh suggested that Ms. Fennessy bring Mr. Cleveland's personal belongings to the scheduled hearing on October 7, 2014, so that the divorce could be finalized that day in accordance with the terms of the Agreement. Mr. Zeh further reaffirmed his commitment to resolving the dispute amicably. Mr. Zeh explained at trial that both of these letters expressed an intent to proceed pursuant to the Agreement.

Although Mr. Zeh communicated an instruction from Mr. Cleveland to rescind, he also continued to insist that the terms of the Agreement could be fulfilled if Decedent or Ms. Fennessy would cooperate with Mr. Cleveland's demands. Pursuant to Georgia precedent regarding rescission:

> In order to effect a rescission, the purchaser must act promptly and adhere to the intent to rescind or risk waiver of his claim: "An announcement of the intent to rescind the contract must be made in a timely fashion, as soon as the facts supporting the claim for rescission are discovered. Moreover, the aggrieved party must adhere to the intent to rescind and may waive any claim for rescission by failing to do so."

*Conway v. Romarion*, 557 S.E.2d 54, 57 (Ga. Ct. App. 2001) (quoting *Buckley v. Turner Heritage Homes,* 547 S.E.2d 373 (Ga. Ct. App. 2001)).

In the case at bar, Mr. Cleveland, in effect, communicated through Mr. Zeh that the Agreement was still valid. As such, we determine that there was no contract repudiation and, therefore, no rescission. *See Brown v. Ragsdale Motor Co.*, 16 S.E.2d 176, 178 (Ga. Ct. App. 1941) (explaining that the party who elects to rescind must "manifest his election by distinctly communicating to the other party his intention to repudiate the contract"). *See also Owens v. Union City Chrysler-Plymouth, Inc.*, 436 S.E.2d 94, 96 (Ga. Ct. App. 1993) (holding that a buyer who purported to rescind the contract but whose subsequent actions indicated an affirmation of the contract could not rely on the "rescission" in court).

Having determined that Mr. Cleveland maintained no valid basis allowing him to rescind the Agreement and that any purported rescission was ineffective by reason of subsequent actions indicating an affirmation of the contract, we conclude that the trial court erred in ultimately finding that a proper rescission had taken place, thereby invalidating the Agreement. We therefore reverse the trial court's order dismissing the Estate's petition and awarding ownership of the Tennessee Residence and the funds from the Fidelity IRA to Mr. Cleveland pursuant to Mr. Cleveland's counter-claim. We remand this matter to the trial court for an adjudication regarding the Estate's petition, including construction of the Agreement and awards of ownership of the assets subject thereto. The issues raised by the Estate with regard to ownership of the Tennessee Residence and Fidelity IRA should be addressed by the trial court upon remand.

## V. Admission of Parol Evidence

The Estate claims that the trial court erred by allowing Mr. Cleveland and his attorney to present testimony to explain terms and/or insert additional terms into the Agreement. The Estate argues that Georgia law provides that parol evidence is "inadmissible to add to, take from, or vary a written contract." *See* Ga. Code Ann. § 13-2-2(1). As such, the Estate asserts that the court erred by considering evidence that contradicted the Agreement.

Mr. Cleveland maintains that the testimony the Estate complains of merely explained the circumstances surrounding the Agreement's execution and is not barred by the parol evidence rule. As Mr. Cleveland points out, the above-quoted statute goes on to state:

> All the attendant and surrounding circumstances may be proved and, if there is an ambiguity, latent or patent, it may be explained; so, if only a part of a contract is reduced to writing (such as a note given in pursuance of a contract) and it is manifest that the writing was not intended to speak the whole contract, then parol evidence is admissible . . . .

Ga. Code Ann. § 13-2-2(1).

Georgia precedent explaining this statutory provision states:

> [T]he construction of contracts involves three steps. At least initially, construction is a matter of law for the court. First, the trial court must decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms; the contract alone

is looked to for its meaning. Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury. The existence or nonexistence of an ambiguity is a question of law for the court. If the court determines that an ambiguity exists, however, a jury question does not automatically arise, but rather the court must first attempt to resolve the ambiguity by applying the rules of construction in [Georgia Code Annotated] § 13-2-2.

*White v. Kaminsky*, 610 S.E.2d 542, 544-45 (Ga. Ct. App. 2004) (quoting *Woody's Steaks, LLC v. Pastoria,* 584 S.E.2d 41 (Ga. Ct. App. 2003)).

We note that the trial court permitted testimony to be introduced with the potential to supplement or vary the express terms of the Agreement. However, the trial court made no determination that the Agreement was ambiguous. Based on the foregoing authority, upon remand, the trial court should not consider any testimony that seeks to "add to, take from, or vary" the Agreement without expressly determining whether an ambiguity exists. We find no error in the trial court's consideration of evidence with regard to the issue of rescission.

## VI. Conclusion

For the foregoing reasons, we reverse the trial court's order dismissing the Estate's petition and awarding ownership of the Tennessee Residence and the funds from the Fidelity IRA to Mr. Cleveland pursuant to Mr. Cleveland's counter-claim. We remand this matter to the trial court for a determination regarding the Estate's petition, including construction of the Agreement and awards of ownership of the assets subject thereto. Costs on appeal are taxed to the appellee, Donald Cleveland.

_____
THOMAS R. FRIERSON, II, JUDGE